[Cite as *State v. Ferguson*, 2011-Ohio-4285.]

IN THE COURT OF APPEALS OF CLARK COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee       :      C.A. CASE NO. 08CA0050

vs.                              :      T.C. CASE NO. 07CR1011

JAMES FERGUSON                   :      (Criminal Appeal from
                                    Common Pleas Court)
    Defendant-Appellant      :

. . . . . . . .

O P I N I O N

Rendered on the 26th day of August, 2011.

. . . . . . . .

David W. Phillips, Atty. Reg. No. 0019966, Clark County Special
Prosecutor for the State of Ohio, Union County Justice Center,
221 West Fifth Street, Marysville, OH 43040
    Attorney for Plaintiff-Appellee

David R. Miles, Atty. Reg. No. 0013841, 125 West Main Street, Suite
201, Fairborn, OH 45324
    Attorney for Defendant-Appellant

. . . . . . . .

GRADY, J.:

{¶ 1} Defendant, James Ferguson, appeals from his conviction

and sentence for child endangering, permitting child abuse, and

felonious assault.

{¶ 2} Defendant and his wife, Vonda Ferguson, adopted six

children: Sherita, Jermaine, Joseph, Julius, Valnita, and Vivian. The family lived in Clark County from 2000 until 2004, when they moved to Union County. In November 2004, Vonda Ferguson, while talking on the phone with a Union County social worker, threatened to stab one of the children. An investigation ensued, following which the children were removed from the Ferguson home. The State sought permanent custody of the children. In 2005, the Fergusons relinquished custody of the children.

{¶ 3} In August 2006, Defendant James Ferguson was indicted in Union County on thirty charges relating to the abuse of his children. That case was dismissed by the State in March 2007. On October 16, 2007, Defendant was indicted by the Clark County grand jury on the same charges: twenty counts of endangering children, R.C. 2919.22(B), five counts of permitting child abuse, R.C. 2903.15(A), and five counts of felonious assault, R.C. 2903.11(A)(1). The matter was tried before a jury in April 2008, and Defendant was found guilty of seventeen counts of endangering children, five counts of permitting child abuse, and three counts of felonious assault. The trial court sentenced Defendant to prison terms totaling sixty-five years.

{¶ 4} Defendant timely appealed to this court from his conviction and sentence.

## Facts

{¶ 5} The children testified at trial regarding the abuse they suffered. Joseph testified that Defendant beat him with a "Honda belt," a white belt Defendant wore to work at the Honda manufacturing plant in Marysville, an extension cord, and a duct-taped wooden paddle. Defendant also held Joseph under water, pushed him off a roof, starved him for days at a time, and duct-taped him to a chair. The abuse began when Joseph was seven or eight and the family lived in Clark County. Defendant would beat Joseph for five to ten minutes, four to five times per week. Defendant held the belt in both hands and hit Joseph with a lot of force. Joseph bled a lot and has scars on his buttocks, legs, and back. If Joseph cried out, socks would be stuffed in his mouth to silence him.

{¶ 6} Defendant was aware that his wife, Vonda Ferguson, had stabbed Joseph with a pen and burned him with an iron. Defendant threatened to kill Joseph if he told anyone about the abuse. Joseph had to wear soiled underwear on his head and eat the excrement if he soiled himself. He also had to stand against a wall for prolonged periods of time, even overnight.

{¶ 7} Valnita testified about being beaten with a duct-taped stick and a white Honda belt. She further testified that all of the children, except the baby Vivian, were beaten with the belt. During the beatings by Defendant, Vonda Ferguson would laugh.

Defendant kicked the children with his steel-toed work boots, and struck Valnita with a hammer, smashing one of her fingers.  Valnita had welts, bruises, scars, and scabs on her back.  Valnita was responsible for caring for Vivian.  If Vivian woke up Defendant or his wife during the night, Valnita would be required to stand against a wall overnight, or Defendant would beat her.  Valnita testified about being burned by a curling iron.

{¶ 8} Julius testified that he was beaten and hit a lot for minor things.  He was struck with a belt or a stick, and had marks on the back of his thighs and buttocks.

{¶ 9} Sherita testified that she was duct-taped to a table and beaten with a bat, a belt, and a stick by Defendant.  She was beaten so hard that she bled through her panties and could hardly walk.  She has scars on her legs, buttocks, and back.  Sherita was forced to put soiled garments in her mouth, and Vonda Ferguson struck her toes and fingers with a hammer hard enough that her nails would turn black and fall off.  The children had to stand against a wall for hours.  Sherita would steal food because she was hungry.

{¶ 10} Jermaine testified that the atmosphere in the Ferguson home was warlike, and a lot of violence was inflicted on the children.  Jermaine was beaten on his bare buttocks with a duct-taped stick for up to ten minutes at a time, and as a result he has scars.  Defendant kicked and punched Jermaine, and forced

him to stand against a wall, sometimes overnight. Jermaine lied for his parents because things would get worse for the other children if he told about the abuse. Jermaine indicated that he and the other children were beaten with the Honda belt and duct-taped. Jermaine did the laundry for the family and he testified that everybody bled. He found scabs and blood in the children's underwear.

{¶ 11} Examinations of Jermaine, Valnita, and Joseph by Dr. Applegate and Dr. Scribano revealed scarring on the children's thighs, backs, and buttocks that was consistent with physical abuse. Burn marks were observed on Valnita and Joseph, and a stab wound was found on Joseph.

{¶ 12} All of the abused children, except Sherita, were examined by a psychologist, Dr. Jolie Brahms. Jermaine was very damaged by the abuse, Julius was suicidal as a result of severe depression, and Valnita indicated that she needed counseling to adapt to a family. Dr. Brahms found that "there was no Joseph."

{¶ 13} Early in the investigation of the Fergusons' treatment of their children, Defendant was interviewed by Union County Sheriff's Detective Jon Kleiber. The interview took place at Defendant's place of employment, Honda of America, and Defendant was not in custody. Defendant admitted whipping the children with his white Honda belt until they bled. Defendant also admitted

hitting the children with a duct-taped stick, which left welts and bruises on them. Defendant indicated that beating one or more of the children was a daily activity. Defendant admitted that the children were beaten so frequently that their skin did not have time to heal between the beatings. Defendant hung some of the children from a second story bannister to make them afraid, and he admitted kicking Jermaine in the chest or stomach. He put soiled washrags in Sherita's and Jermaine's mouths. Defendant admitted that his wife, Vonda, ordered him to beat the children until they bled, and he would then continue to beat the children. Vonda Ferguson would use make-up to cover the children's scars and injuries so she did not get caught by the local authorities, teachers, or school officials.

{¶ 14} Defendant's defense at trial was that the children's allegations of abuse were grossly exaggerated and a contrived attempt to escape a disciplined home, and that the allegations were induced by leading questions asked by investigators.

**FIRST ASSIGNMENT OF ERROR**

{¶ 15} "THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO AMEND FIFTEEN CHILD ENDANGERING COUNTS OF THE INDICTMENT DURING THE TRIAL."

{¶ 16} During the trial the Stated filed a motion to amend fifteen of the twenty counts of endangering children to include

the culpable mental state of recklessness, which was inadvertently omitted from the indictment. Defendant objected, and requested a continuance of the trial and to discharge the jury pursuant to Crim.R. 7(D). The trial court permitted the amendment and denied Defendant's request for a continuance or discharge of the jury.

Relying upon *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624 (*Colon I*), Defendant now argues that the failure to include an essential element of the child endangering charges, the culpable mental state of recklessness, is a fatal defect that cannot be cured by amendment of the indictment, and that the trial court erred in permitting the State to amend the indictment to add the omitted culpable mental state.

{¶ 17} Crim.R. 7(D) provides that the court may at any time before, during, or after trial amend the indictment with respect to any defect or omission, provided no change is made in the name or identity of the crime charged. In *State v. O'Brien* (1987), 30 Ohio St.3d 122, the Ohio Supreme Court held that the amendment of the indictment to include the culpable mental state of recklessness did not change the name or identity of the crime of endangering children, nor did it change the penalty or the degree of the offense. Accordingly, the amendment made in the present case was proper per Crim.R. 7(D). *Id.*, at 126.

{¶ 18} In *State v. Hamilton*, Montgomery App. No. 22895,

2009-Ohio-4602, we concluded that *Colon I* implictly overruled *O'Brien*. *Id.*, at ¶17. After our decision in *Hamilton*, and the Supreme Court's decision in *Colon I*, the Ohio Supreme Court on March 25, 2010, decided *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, wherein it held that an amendment to an indictment for endangering children that added language that the victim suffered serious physical harm was proper per Crim.R. 7(D). The Supreme Court cited *O'Brien* with approval, stating that as long as the State complies with Crim.R. 7(D), it may cure a defective indictment by amendment, even if the original indictment omits an essential element of the offense with which Defendant is charged. *Pepka*, at ¶15.

{¶ 19} In light of the Supreme Court's approval of *O'Brien* in *Pepka*, a decision released after *Colon I and II,* and our decision in *Hamilton*, we conclude that the holding in *O'Brien* regarding the amendment of indictments remains good law. See also *State v. Rice*, Hamilton App. No. C-080444, 2009-Ohio-1080. Under *O'Brien*, an amendment to include an omitted essential element of the offense is proper if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of the element from the indictment. *O'Brien*, at paragraph two of the syllabus. That is the case here.

{¶ 20} Defendant states in conclusory fashion that he was misled

and prejudiced by the permitted amendment. Defendant, however, offers no explanation of how or why he was prejudiced. He does not claim that he would have defended the case any differently or otherwise have altered his trial strategy. Neither does Defendant claim he was surprised. In that regard, we note that the first count of child endangerment pertaining to each child, counts one, five, nine, thirteen and seventeen, did in fact include the culpable mental state of recklessness. That culpable mental state was inadvertently omitted from the remaining counts of child endangering pertaining to each child. Defendant had adequate prior notice and was fairly informed about the elements of the charge against which he must defend, which is the purpose of an indictment. *Pepka*. The amendment cured any error resulting from the further omissions.

{¶ 21} Because this record does not demonstrate that Defendant was misled or prejudiced by the omission of the mens rea element from some, but not all, of the child endangering counts, or by the permitted amendment, the amendment to include that omitted essential element was proper, and Defendant was not entitled to a continuance or discharge of the jury. *Pepka; O'Brien*; Crim.R. 7(D).

{¶ 22} Defendant's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 23} "APPELLANT'S FIVE CONVICTIONS FOR PERMITTING CHILD ABUSE SHALL BE REVERSED BECAUSE THE TRIAL COURT LACKED JURISDICTION."

{¶ 24} Defendant argues that because the indictment failed to include a culpable mental state for the permitting child abuse charges, it failed to charge an offense and accordingly the trial court lacked subject matter jurisdiction over those offenses. Therefore, Defendant's convictions for those offenses must be reversed. We disagree.

{¶ 25} R.C. 2903.15(A) sets forth the offense of permitting child abuse as follows:

{¶ 26} "No parent, guardian, custodian, or person having custody of a child under eighteen years of age or of a mentally or physically handicapped child under twenty-one years of age shall cause serious physical harm to the child, or the death of the child, as a proximate result of permitting the child to be abused, to be tortured, to be administered corporal punishment or other physical disciplinary measure, or to be physically restrained in a cruel manner or for a prolonged period."

{¶ 27} R.C. 2903.15(A) is silent as to any culpable mental state. Furthermore, that provision does not plainly indicate a purpose to impose strict liability. In that circumstance, recklessness is the default culpable mental state that applies.

R.C. 2901.21(B). We note that the Ohio Jury Instruction Committee states that recklessness is the appropriate culpable mental state that applies to permitting child abuse as a result of the application of R.C. 2901.21(B). See Ohio Jury Instructions, §CR 503.15, and the Comment thereto. We agree. See also *State v. McGee* (1997), 79 Ohio St. 3d 193, interpreting child endangering in violation of R.C. 2919.22(A).

{¶ 28} Even though the indictment omitted the mens rea element of recklessness from the permitting child abuse charges, this is not the rare case where that error permeated the entire trial and resulted in multiple errors, resulting in a structural error, rather than a plain error, analysis. *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749 (*Colon II*). The prosecutor argued to the jury that recklessness was required for the permitting child abuse charges. Even more importantly, the trial court instructed the jury on the culpable mental state of recklessness as it applies to permitting child abuse in accordance with Ohio Jury Instructions §CR 503.15. With respect to each count of permitting child abuse, the court instructed the jury that they must find that Defendant recklessly permitted the abuse. The omission of the mens rea element from an indictment does not require reversal where, as here, the trial court properly instructs the jury. *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, at ¶16; *Colon II*.

We cannot say that but for the failure of the indictment to specify that Defendant acted recklessly in permitting his children to be abused, he would have been acquitted of those charges. No plain error is demonstrated. *State v. Long* (1978), 53 Ohio St.2d 91.

{¶ 29} Defendant's second assignment of error is overruled.

THIRD ASSIGNMENT OF ERROR

{¶ 30} "APPELLANT'S ENTIRE INDICTMENT IS VOID DUE TO THE IMPROPER APPOINTMENT OF A SPECIAL PROSECUTOR."

{¶ 31} The prosecution of this case in Clark County was conducted by Union County Prosecuting Attorney David Phillips, several of his assistant prosecuting attorneys, and assistant Ohio Attorney General Chris Wagner. Defendant argues that his indictment is void due to the improper appointment of a special prosecutor. Defendant cites no authority to support that claim.

{¶ 32} At the outset we note that Defendant's claim was not raised in the trial court below. Accordingly, Defendant has waived all but plain error. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been different. *State v. Long, supra.*

{¶ 33} Objections based upon defects in the institution of the prosecution, such as this, must be raised by motion prior to trial or they are waived. Crim.R. 12(C)(1), (H). In any event, the court of common pleas has broad discretion to appoint counsel to

assist the prosecuting attorney in a pending criminal case whenever it is of the opinion that the public interest so requires. *State ex rel. Williams v. Zaleski* (1984), 12 Ohio St.3d 109; R.C. 2941.63.

{¶ 34} At the request of the Clark County Prosecuting Attorney, and pursuant to R.C. 2941.63, the Clark County Common Pleas Court appointed special prosecutors to handle this matter, finding the request for a special prosecutor to be appropriate. No hearing into the appointment of a special prosecutor was required. *Zaleski.* Defendant does not even allege, much less demonstrate, how he was prejudiced by the appointment of a special prosecutor. The prejudice, if there was any, was waived by Defendant's failure to timely object. No plain error has been demonstrated.

{¶ 35} Defendant's third assignment of error is overruled.

FOURTH ASSIGNMENT OF ERROR

{¶ 36} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS STATEMENTS."

{¶ 37} Defendant argues that the trial court erred by overruling his motion to suppress statements he made to police.

{¶ 38} During the previous criminal proceedings against Defendant in Union County, on the same charges that he abused his children, Defendant filed a motion to suppress statements he made to Union County Sheriff's Detective Jon Kleiber during an interview

at Defendant's place of employment on April 18, 2005. A hearing was held on September 11, 2006. On September 27, 2006, the trial court overruled Defendant's motion to suppress. The court found that Defendant was not in custody when he made the statements, that in any event Defendant was properly advised of his *Miranda* rights, and that Defendant's statements were voluntary. On March 23, 2007, the trial court granted the State's request to dismiss the case against Defendant without prejudice.

{¶ 39} After criminal proceedings were subsequently filed against Defendant in Clark County, Defendant filed the same motion to suppress his oral statements he previously filed in the Union County case. The trial court held a hearing on February 20, 2008, at which no witnesses testified. The court instead heard the oral arguments of counsel. On April 10, 2008, the trial court overruled Defendant's motion to suppress his statements.

{¶ 40} The State argues that the doctrine of res judicata bars relitigation of the motion to suppress Defendant's statements that Defendant previously litigated in the Union County proceedings. We disagree. Res Judicata bars all subsequent actions based on any claim arising out of a transaction or occurrence that was the subject matter of a previous action in which a valid, final judgment was entered. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379. The judgment of the Union County Common Pleas Court overruling

Defendant's motion to suppress his statements was interlocutory, not final, and no final judgment on the charges in that indictment was entered by the Union County court, which instead dismissed those charges without prejudice.

{¶ 41} In arguing that the trial court erred in overruling his motion to suppress his statements, Defendant claims that he was in custody at the time he gave his statements to police, and that his statements were not voluntary. However, whether Defendant was in custody is immaterial, because it is undisputed that *Miranda* warnings were given and that Defendant waived his *Miranda* rights prior to questioning.

{¶ 42} With respect to Defendant's claim that his statements were not voluntary, in *State v. Moore,* Greene App. No. 07CA93, 2008-Ohio-6238, at ¶12-13, we stated:

{¶ 43} "The Due Process Clause requires an inquiry separate from custody considerations and compliance with *Miranda* regarding whether a suspect's will was overborne by the circumstances surrounding the giving of a confession. *Dickerson v. United States* (2000), 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405. Voluntariness of a confession and compliance with *Miranda* are analytically separate inquiries. *State v. Pettijean* (2000), 140 Ohio App.3d 517, 748 N.E.2d 133. Even if *Miranda* warnings are not required, a confession may be involuntary if the defendant's will was

overborne by the totality of the facts and circumstances surrounding the giving of his confession. *Dickerson; Pettijean.*

{¶ 44} "The due process test takes into consideration both the characteristics of the accused and the details surrounding the interrogation. *Id.* Factors to be considered include the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of the interrogation, the existence of physical deprivation or mistreatment, and the existence of threats or inducements. *State v. Edwards* (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051. A defendant's statement to police is voluntary absent evidence that his will was overborne and his capacity for self-determination was critically impaired due to coercive police conduct. *Colorado v. Spring* (1987), 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954; *State v. Otte,* 74 Ohio St.3d 555, 660 N.E.2d 711, 1996-Ohio-108."

{¶ 45} The record demonstrates that following Defendant's waiver of his *Miranda* rights, Defendant was coherent, straight forward, and very cooperative in answering questions. Although Defendant was questioned by police for a total of five and one-half hours, he used the restroom during a break, and there was at all times food and water available nearby, although Defendant never requested any of those things. There was no physical deprivation, mistreatment, or coercive police conduct. No threats or promises

were made to Defendant to induce his statements. After the interview concluded, Defendant left with his wife.

{¶ 46} The totality of the facts and circumstances surrounding Defendant's interrogation do not demonstrate that Defendant's will was overborne by coercive police conduct and that his confession was involuntary.

{¶ 47} Defendant's fourth assignment of error is overruled.

**FIFTH ASSIGNMENT OF ERROR**

{¶ 48} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS FOR DUE PROCESS AND SPEEDY TRIAL VIOLATIONS."

{¶ 49} On February 5, 2008, Defendant filed a motion to dismiss the indictment for a violation of his speedy trial rights. On March 11, 2008, the State filed a memorandum in opposition to Defendant's motion. On April 11, 2008, the trial court filed an Entry overruling Defendant's motion. The court's Entry did not contain any findings of fact or conclusions of law, and merely stated:

{¶ 50} "Upon review of the Court record, written and oral arguments of counsel, the Court finds that the Defendant's motion to dismiss on grounds of speedy trial and due process violations is not well taken and the same is denied."

{¶ 51} On April 14, 2008, Defendant filed a request for written findings of fact and conclusions of law with respect to the trial

court's denial of Defendant's motion to dismiss on speedy trial grounds. Prior to the commencement of trial, the court, by oral pronouncement, denied Defendant's request for written findings of fact and conclusions of law.

{¶ 52} By Decision and Entry filed on December 16, 2010, we remanded this case to the trial court for findings of fact and conclusions of law with respect to the trial court's denial of Defendant's motion to dismiss for a violation of his speedy trial rights. We further provided the parties with ample opportunity to file additional briefs on this issue after the trial court's findings were filed.

{¶ 53} On May 11, 2011, the trial court filed an Entry containing its findings of fact and conclusions of law with respect to the trial court's denial of Defendant's motion to dismiss on speedy trial grounds. No additional briefs on the speedy trial issue have been filed by either party.

{¶ 54} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. In Ohio that right is implemented by the statutory scheme imposing specific time limits in R.C. 2945.71 et seq. *State v. Pachey* 91980), 64 Ohio St.2d 218. The particular rights which that statutory scheme confers attach when criminal charges are placed against a

defendant. They continue in operation so long as those charges remain pending, until he is brought to trial.

{¶ 55} R.C. 2945.71(C)(2) requires the State to bring a person against whom a felony charge is pending to trial within two hundred and seventy days after the person's arrest, unless the time for trial is extended pursuant to the provisions in R.C. 2945.72. Each day the person is held in jail in lieu of bail on the pending charge is counted as three days. R.C. 2945.71(E). For a violation of the rights these sections confer, a defendant may seek a discharge from criminal liability pursuant to R.C. 2945.73. The merits of a motion for discharge for a violation of speedy trial rights made pursuant to R.C. 2945.73 are determined as of the date the motion is filed, not when it is decided or when, after a denial, a defendant is brought to trial. *State v. Morris*, Montgomery App. No. 19283, 2003-Ohio-1049.

{¶ 56} The time limits for bringing a defendant to trial may be extended or tolled by R.C. 2945.72, which provides in relevant part:

{¶ 57} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

{¶ 58} "* * *

{¶ 59} "(E) Any period of delay necessitated by reason of a

plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

{¶ 60} "*    *    *

{¶ 61} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."

{¶ 62} A review of the files and records in this case reveals that at the time Defendant filed his motion to dismiss for want of a speedy trial on February 5, 2008, far more than the 270 days allowed for trial by R.C. 2945.71 had elapsed since Defendant was first served with a summons on the original indictment in Union County, Ohio, on August 7, 2006.  Thus, Defendant established a prima facie case for discharge pursuant to R.C. 2945.73, and the burden shifted to the State to demonstrate that Defendant was brought to trial within the time required by R.C. 2945.71 and 2945.72.  *State v. Geraldo* (1983), 13 Ohio App.3d 27.  The State has met its burden in this case.

### The Union County Case

{¶ 63} Defendant was indicted on these same charges in Union County, Ohio, on August 4, 2006.  On August 7, 2006, Defendant was served with a summons on that indictment, at which point the speedy trial time began to run.  Defendant was not arrested on these charges.  Speedy trial time ran from August 7, 2006 until

August 15, 2006, at which time Defendant filed several pretrial motions including a motion for a change of venue, a demand for discovery, a motion to dismiss the indictment, and a motion to suppress evidence, which tolled the time for trial pursuant to R.C. 2945.72(E). From August 7, 2006, until August 15, 2006, eight days chargeable to the State for speedy trial purposes elapsed. From August 15, 2006, until September 27, 2006, when the trial court ruled on many of Defendant's pending pretrial motions, the time for trial was tolled pursuant to R.C. 2945.72(E).

{¶ 64} On September 27, 2006, the speedy trial time began running again and ran until October 20, 2006, when Defendant began filing from that date onward a number of additional pretrial motions, including a motion to compel the State to produce one of the child victims for trial, a motion for a protective order, a motion to compel discovery, a motion in limine, and a motion for a directed verdict. Those motions tolled the time for trial pursuant to R.C. 2945.72(E). Furthermore, on January 30, 2007, the trial court granted a reasonable continuance of the trial at the State's request. That continued the time for trial pursuant to R.C. 2945.72(H). On March 22, 2007, the State dismissed this case without prejudice.

{¶ 65} As the trial court correctly points out in its findings of fact and conclusions of law on the speedy trial issue, throughout

the pendency of these proceedings in Union County, Ohio, Defendant filed many pretrial motions, several of which extended the time for trial pursuant to R.C. 2945.72. Defendant concedes this fact in his appellate brief. Some of those pretrial motions remained pending at the time the State dismissed this case on March 22, 2007. As the trial court noted, nearly every delay of the trial was occasioned by motions made by the defendant.

{¶ 66} Between September 27, 2006, and October 20, 2006, twenty-three days chargeable to the State for speedy trial purposes elapsed. From October 20, 2006, until March 22, 2007, when the State dismissed this case, the time for trial was tolled as a result of Defendant's pretrial motions that were still pending, R.C. 2945.72(E), and the granting of a reasonable continuance of the trial other than upon the accused's own motion, R.C. 2945.72(H). At the time the State dismissed this case on March 22, 2007, which ended the Union County proceedings, a total of thirty-one days chargeable to the State for speedy trial purposes had elapsed.

The Clark County Case

{¶ 67} Defendant was reindicted on these same charges in Clark County, Ohio, on October 16, 2007. The time period between the State's dismissal of this case on March 22, 2007, and Defendant's reindictment on these same charges on October 16, 2007, is not included in the speedy trial computations because no charges were

pending against Defendant during that time. *State v. Broughton* (1991), 62 Ohio St.3d 253. However, upon reindicting Defendant in a subsequent indictment premised upon the same facts alleged in the original indictment, the State does not get a fresh 270 day time period to bring Defendant to trial. Rather, any time period that elapsed under the original indictment is tacked onto the time period commencing with the second indictment. *Id*.

{¶ 68} On October 17, 2007, Defendant was served with a summons on the Clark County indictment and the speedy trial time began to run. Defendant was not arrested on these charges. Speedy trial time ran from October 17, 2007, until February 5, 2008, at which time Defendant filed a motion to dismiss and a motion to suppress the evidence which tolled the time for trial pursuant to R.C. 2945.72(E). From October 17, 2007, until February 5, 2008, one hundred and eleven days chargeable to the State for speedy trial purposes elapsed. From February 5, 2008, until April 10, 2008, when the trial court overruled Defendant's motion to dismiss and his motion to suppress the evidence, the time for trial was tolled pursuant to R.C. 2945.72(E).

{¶ 69} On April 10, 2008, the trial court overruled Defendant's motion to dismiss and his motion to suppress, and the speedy trial time began running again, and ran until April 14, 2008, at which time Defendant's jury trial commenced. Between April 10, 2008,

and April 14, 2008, four days chargeable to the State for speedy trial purposes elapsed.

{¶70} At the time Defendant filed his motion to dismiss on February 5, 2008, claiming a violation of his speedy trial rights, thirty one days chargeable to the State for speedy trial purposes had elapsed during the Union County proceedings, and one hundred and eleven days chargeable to the State for speedy trial purposes had elapsed during the Clark County proceedings, for a total of one hundred and forty-two elapsed days. That is well within the two hundred and seventy day limit allowed by R.C. 2945.71 for bringing Defendant to trial.

{¶71} Furthermore, at the time Defendant's jury trial commenced in Clark County, on April 14, 2008, a total of one hundred and fifteen days chargeable to the State for speedy trial purposes had elapsed in the Clark County proceedings. That figure added to the thirty-one days chargeable to the State for speedy trial purposes that elapsed during the Union County proceedings, results in a total of one hundred and forty-six days chargeable to the State for speedy trial purposes that had elapsed. Again, that is well within the allowable two hundred and seventy day limit for bringing Defendant to trial. R.C. 2945.71. Defendant's speedy trial rights were not violated in this case.

{¶72} Defendant also complains that his constitutional speedy

trial rights were violated when, following a failed prosecution in Union County, Ohio, there was a seven month delay in re-initiating charges in Clark County, Ohio, which were identical to and based upon the same facts as the Union County charges. In determining whether this delay violated Defendant's constitutional speedy trial rights, it is necessary to balance and weigh the conduct of the prosecution and the defendant by examining four factors: (1) the length of the delay; (2) the reason for the delay; (3) Defendant's assertion of his speedy trial rights; and (4) the prejudice to Defendant as a result of the delay. *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The first factor, the length of the delay, performs a gate-keeping function to the extent that a delay approaching one year typically is required to establish "presumed prejudice," the existence of which is necessary to trigger an inquiry into the other three *Barker* factors. *Barker*, at 530; *Doggett v. United States* (1992), 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520; *State v. Triplett* (1997), 78 Ohio St.3d 566; *State v. Bailey*, Montgomery App. No. 20764, 2005-Ohio-5506.

{¶ 73} Here, the seven month delay between dismissal of the Union County, Ohio, proceeding by the State and Defendant's reindictment on those same charges in Clark County, Ohio, is legally insufficient to establish presumed prejudice and trigger a review

of the other *Barker* factors. Defendant's constitutional speedy trial rights were not violated.

{¶ 74} Defendant's fifth assignment of error is overruled.

SIXTH ASSIGNMENT OF ERROR

{¶ 75} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR A CONTINUANCE OF THE JURY TRIAL."

{¶ 76} The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court, and an appellate court must not reverse the trial court's decision absent an abuse of discretion. *State v. Unger* (1981), 67 Ohio St.2d 65. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. *State v. Adams* (1980), 62 Ohio St.2d 151.

{¶ 77} In *Ungar v. Sarafite* (1964), 376 U.S. 575, 589-90, 84 S.Ct. 841, 11 L.Ed.2d 921, the United States Supreme Court stated:

{¶ 78} "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend

with counsel an empty formality. *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Nilva v. United States*, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; *Torres v. United States*, 270 F.2d 252 (C.A.9th Cir.); cf. United States v. Arlen, 252 F.2d 491 (C.A.2d Cir.)."

{¶ 79} The Ohio Supreme Court has adopted a balancing test that weighs against any potential prejudice to a defendant, concerns such as the court's right to control its own docket, and the public's interest in the prompt and efficient dispatch of justice. *Unger*, 67 Ohio St.2d at 67. In evaluating a motion for a continuance, the court should consider: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which give rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. *Id.* at 67-68.

{¶ 80} On February 12, 2008, the court ordered trial of this

case to commence on April 14, 2008. On February 20, 2008, the trial court ordered the State to provide Defendant with a bill of particulars, which the State filed on March 28, 2008, but which Defendant did not receive until April 1, 2008. On April 4, 2008, Defendant filed a motion to dismiss and/or continue the trial, claiming that because of the State's late filing of the bill of particulars, Defendant needed more time to both file motions raising new legal issues that arise as a result of the bill of particulars and prepare for trial. That same day, April 4, 2008, the State filed its response, a memorandum contra Defendant's motion to dismiss and/or continue the trial.

{¶ 81} The State argued that Defendant's request for a continuance, based upon the fact that the bill of particulars filed by the State raised new legal issues and was merely a delaying tactic, because Defendant had received essentially the same bill of particulars on August 29, 2006, over a year before, during the Union County proceedings, and Defendant at all times had open access to the State's entire file in this matter and therefore knew the facts and issues in this case. On April 11, 2008, the trial court filed its Entry denying Defendant's request for a continuance of the trial. On April 14, 2008, Defendant filed a motion seeking reconsideration of the court's previous ruling denying a continuance. Just prior to the start of trial on April

14, 2008, Defendant again orally moved for a continuance of the trial. After hearing the arguments of counsel, the trial court again denied Defendant's motion for a continuance.

{¶ 82} The principal reason for Defendant's request for a continuance was his claim that the bill of particulars filed in 2006 in the Union County proceedings had been found by that court to lack specificity sufficient to fairly put Defendant on notice of what conduct on his part constituted the criminal offense(s) with which he was charged, and that the nearly identical bill of particulars filed on March 28, 2008, in the Clark County proceedings, suffered from the same deficiencies, because it failed to provide specific dates, times, and places the offenses occurred, and that those deficiencies had to be cured by a more specific bill of particulars before Defendant could properly prepare his defense. Simply stated, Defendant wanted a continuance to compel a more specific bill of particulars.

{¶ 83} Although there is no indication that a previous continuance had been sought by Defendant, the delay Defendant sought was of unspecified length. The State argued that the trial should not be delayed because the victims were prepared to go forward, so they could move on with their lives. Furthermore, as discussed in more detail in Defendant's seventh assignment of error, in addition to the bill of particulars filed on March 28,

2008, the State also filed an amended indictment and bill of particulars on April 18, 2008, but was unable to provide an exact date, time, and place for every offense because it did not possess any more particular or specific information than that already provided. In that regard, we note that the abuse of these children involved a continuing course of conduct that occurred just about every day, over a prolonged period of several years, when the victims were young children. Moreover, Defendant has failed to demonstrate how he was prejudiced by the bill of particulars.

{¶ 84} On these facts and circumstances, an abuse of discretion on the part of the trial court in denying Defendant's requested continuance has not been demonstrated. Defendant's sixth assignment of error is overruled.

SEVENTH ASSIGNMENT OF ERROR

{¶ 85} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR AN ORDER COMPELLING THE STATE TO PROVIDE A PROPER AND SPECIFIC BILL OF PARTICULARS."

{¶ 86} On March 28, 2008, two weeks before trial, the State filed a bill of particulars in compliance with the trial court's previous order that a bill of particulars be filed. Defendant complains that this bill of particulars filed by the State was strikingly similar to the one the Union County Court of Common Pleas found to be deficient. On the morning of trial, April 14,

2008, Defendant filed a motion to compel the State to file a proper and more specific bill of particulars. The trial court addressed the matter prior to the commencement of trial and overruled Defendant's motion. The court concluded that given the nature of the alleged offenses, the State could not provide more specific information.

{¶ 87} The offenses charged in this case involved the horrendous physical abuse of five young children that occurred almost daily over an extended period of time. The indictment filed on October 16, 2007, the bill of particulars filed on March 28,2008, and the amended indictment and bill of particulars filed on April 18, 2008, all specified that the offenses occurred during a four-year period of time, from July 24, 2000 through November 19, 2004.

{¶ 88} Defendant was charged with multiple counts of endangering children, R.C. 2919.22(B)(1)-(4), permitting child abuse, R.C. 2903.15(A), and felonious assault, R.C. 2903.11(A)(1). The precise date and time of the offenses are not essential elements of those crimes. *State v. Barnecut* (1988), 44 Ohio App.3d 149. Thus, a certain degree of inexactitude in averring the date of the offense is not per se impermissible or fatal to the prosecution. *State v. Sellards* (1985), 17 Ohio St.3d 169; *State v. Lawrinson* (1990), 49 Ohio St.3d 238.

{¶ 89} Nevertheless, where an accused requests a bill of

particulars, the State must supply specific dates and times for the alleged offense if it possesses that information. *Sellards, supra*. Furthermore, even if the State is unable to supply more specific dates for the offenses charged because it does not possess such information, the absence of specific dates may yet be fatal to the prosecution if it results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified. *Sellards, supra*.

{¶ 90} In many cases involving child abuse the victims are young children who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time. *Barnecut, supra*. That is the case here. Furthermore, there is no evidence that the State knew of any more specific dates for the offenses than those in the indictment and bill of particulars. The State was simply unable to supply specific dates when each of these many offenses occurred because it did not have that information.

{¶ 91} The only remaining question is whether the State's inability to supply more specific dates and times for each of these many offenses that occurred over a four-year period resulted in material detriment to Defendant's ability to defend himself. Defendant claims in conclusory fashion that is the case, but fails

to identify how he was prejudiced by the lack of precise dates and times. He claims only that it was strikingly similar to the bill of particulars the Union County Common Pleas Court had found deficient. That bare contention fails to demonstrate prejudice.

{¶ 92} Defendant's defense at trial was <u>not</u> that he was indisputably elsewhere during part, but not all, of the times specified for when these offenses occurred. Instead, Defendant's defense was that the children's stories about being abused were grossly exaggerated and therefore lies, that they were induced by leading questions and coaching by investigators, that Defendant's punishment of the children was proper parental discipline, and that it was Defendant's wife, Vonda Ferguson, not Defendant, who abused the children. The inexactitude in supplying dates and times that these offenses occurred would not be a material detriment to Defendant's ability to defend himself on those theories. *Barnecut*. No violation of Defendant's right to a fair trial or due process has been demonstrated.

{¶ 93} Defendant's seventh assignment of error is overruled.

### EIGHTH ASSIGNMENT OF ERROR

{¶ 94} "THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A CUMULATIVE SIXTY-FIVE YEAR SENTENCE."

{¶ 95} Defendant argues that the trial court abused its

discretion in sentencing him to a sixty-five year prison term, which Defendant claims is excessive.

{¶ 96} In *State v. Jeffrey Barker,* Montgomery App. No. 22779, 2009-Ohio-3511, at ¶36-38, we wrote:

{¶ 97} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum, consecutive, or more than minimum sentences. *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, at paragraph 7 of the syllabus. Nevertheless, in exercising its discretion the trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and 2929.12. *State v. Mathis,* 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855, at ¶ 37.

{¶ 98} "When reviewing felony sentences, an appellate court must first determine whether the sentencing court complied with all applicable rules and statutes in imposing the sentence, including R.C. 2929.11 and 2929.12, in order to find whether the sentence is contrary to law. *State v. Kalish,* 120 Ohio St.3d 23, 896 N.E.2d 124, 2008-Ohio-4912. If the sentence is not clearly and convincingly contrary to law, the trial court's decision in imposing the term of imprisonment must be reviewed under an abuse of discretion standard. *Id.*

{¶ 99} "'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable.' *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144."

{¶ 100} A review of the sentencing hearing demonstrates that the trial court considered the presentence investigation report, the purposes and principles of felony sentencing, R.C. 2929.11, the seriousness and recidivism factors, R.C. 2929.12, statements by all parties at sentencing, and the victim impact statements. The court also informed Defendant about post-release control requirements. Accordingly, the trial court complied with all applicable rules and statutes in imposing its sentence. Furthermore, although the eight-year prison terms imposed for the endangering children and felonious assault counts and the five year prison terms imposed for the permitting child abuse counts were the maximum sentences allowed by law for felonies of the second and third degrees, respectively, those terms are nevertheless within the authorized range of available punishments. R.C. 2929.14(A)(2), (3). Defendant's sentence is not clearly and convincingly contrary to law. *Kalish*.

{¶ 101} In arguing that his sixty-five year prison term is excessive and constitutes an abuse of the trial court's discretion, Defendant points out that he has no previous convictions, he has

lost his job at the Honda plant where he worked for twenty years, he does not drink alcohol, smoke, or use drugs, and he is an extremely religious man who often does volunteer work at his church. As the trial court noted, however, Defendant's conduct constitutes multiple counts of child abuse involving horrific physical and mental abuse and torture of his young children that occurred on an almost daily basis for several years. That abuse resulted in serious physical and psychological harm to Defendant's children. R.C. 2929.12(B)(2). Defendant's relationship with the victims, their parent, facilitated the offense. R.C. 2929.12(B)(6). There are no grounds that mitigate the seriousness of Defendant's conduct. Accordingly, Defendant's conduct constitutes the worst form of the offense. Furthermore, although Defendant has no prior criminal record and was a law abiding citizen for many years, Defendant shows no genuine remorse. R.C. 2929.12(D)(5). A minimum prison term would demean the seriousness of these offenses.

{¶ 102} Although the trial court imposed the maximum sentence allowable for each offense, it ran some sentences concurrently and others consecutively for a total sentence of sixty-five years. The record before us justifies the sentence imposed on Defendant. No abuse of discretion on the part of the trial court is demonstrated.

{¶ 103} Defendant's eighth assignment of error is overruled.

**NINTH ASSIGNMENT OF ERROR**

{¶ 104} "THE TRIAL COURT ERRED IN NOT MAKING A COMPLETE RULING ON THE ISSUE OF COURT COSTS AND RESTITUTION."

{¶ 105} In his ninth and final assignment of error, Defendant argues only one issue with respect to the imposition of court costs and restitution: that the trial court's original June 10, 2008 Judgment Entry of Conviction did not constitute a final, appealable order because it did not include court costs and instead indicated that issue was still before the court and would be set for a hearing at a later date.  In its brief, the State agreed with Defendant that the trial court's Judgment Entry of Conviction is not a final, appealable order because it did not include the costs of prosecution, and requested that we remand the matter to the trial court to calculate and impose court costs.

{¶ 106} In our Decision and Entry filed on July 14, 2010, we concluded that because the record in this case demonstrates that when the trial court filed its Judgment Entry of Conviction it clearly intended to impose court costs but deferred determination of the amount of those costs, the court's failure to calculate and include court costs in its Judgment Entry of Conviction constitutes a clerical error that may be corrected per Crim.R. 36, and does not render the Judgment Entry of Conviction non-final. We remanded the matter to the trial court to determine the amount

of court costs and restitution, if any, Defendant must pay, and include those matters in its Judgment Entry of Conviction. On October 28, 2010, the trial court filed its Amended Judgment Entry of Conviction wherein it reimposed the same terms of imprisonment upon Defendant and ordered Defendant to pay costs of the prosecution in the amount of $20,681.92, but declined to order any restitution due to the length of Defendant's sentence and his financial state. The court also ordered Defendant to pay additional court costs in the amount of $9,786.49.

{¶ 107} No notice of appeal has been filed by either party from the trial court's October 28, 2010 Amended Judgment Entry of Conviction, and neither party has filed a supplemental brief challenging the amount of costs imposed by the trial court in this case, or the trial courts' refusal to order restitution. Accordingly, Defendant's finality argument in this assignment of error has become moot by virtue of the trial court's October 28, 2010 Amended Judgment Entry of Conviction. There being no other issue raised relevant to court costs or restitution, Defendant's ninth assignment of error is overruled.

{¶ 108} The judgment of the trial court will be affirmed.


FROELICH, J., concurs

BROGAN, J. concurring separately.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

BROGAN, J., concurring:

{¶ 109} I concur in the well-reasoned opinion of Judge Grady in all respects except whether the court's judgment entry of July 14, 2010 was a final appealable order. In *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, the Ohio Supreme Court held that a sentencing entry is a final appealable order as to costs. Justice Stratton writes in pertinent part the following:

{¶ 110} " 'A judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order.' *Bell v. Horton* (2001), 142 Ohio App.3d 694, 696, 756 N.E.2d 1241. For example, an order that determines liability but defers the determination of damages is not a final appealable order, because it does not in effect determine the action and prevent a judgment or otherwise meet the definition in R.C. 2505.02(B)(1). *State ex rel. A&D Ltd. Partnership v. Keefe* (1996), 77 Ohio St.3d 50, 53, 671 N.E.2d 13. However, when the remaining issue 'is mechanical and unlikely to produce a second appeal because only a ministerial task similar to *asserting costs* remains,' then the order is final and appealable. (Emphasis added.) *State ex*

*rel. White v. Cuyahoga Metro. Hous. Auth.* (1997), 79 Ohio St.3d 543, 546, 684 N.E.2d 72.

{¶ 111} "Pursuant to R.C. 2947.23, it is undisputed that trial courts have authority to assess costs against convicted criminal defendants. When a court assesses unspecified costs, the only issue to be resolved is the calculation of those costs and creation of the bill. Calculating a bill for the costs in a criminal case is merely a ministerial task. Therefore, we hold that failing to specify the amount of costs assessed in a sentencing entry does not defeat the finality of the sentencing entry as to costs. See *State v. Slater*, Scioto App. No. 01CA2806, 2002-Ohio-5343, 2002 WL 31194337, ¶ 5, fn. 3."

{¶ 112} More than two years before the court imposed the sentence upon Ferguson, the State filed a motion to certify the costs of prosecution as "court costs" under R.C. 2947.23. There is a dispute in Ohio appellate courts whether the "costs of prosecution" provision in R.C. 2947.23 includes special prosecutor fees. See *State v. Sales* (Aug. 6, 1985), Carroll App. No. 504 and *State v. Perz* (May 16, 2008), Lucas App. No. L-07-1330. See also *State v. Noe* (December 31, 2009), Lucas App. No. 06-1393, L-09-1193. Certainly this issue is not mechanical and unlikely to produce a second appeal because it is a "ministerial" task such as calculating a bill for costs as performed by court clerks.

{¶ 113} I therefore believe the July 14, 2010 judgment entry was not a final appealable order because it required the trial court to determine the threshold question of whether the special prosecutor fees were costs as encompassed by R.C. 2947.23. The court's order did not involve a "clerical error" as contemplated by Crim.R. 36. The trial court clearly intended to address that legal issue at a later date. Therefore, Ferguson's first appeal should have been treated as a premature appeal until the court finally resolved all legal issues before it including the issue of special prosecutor fees as costs. After the court determined that issue upon remand, the appeal was in a final appealable posture. Since Ferguson did not challenge this Court's costs award upon remand, I would affirm the trial court's judgment in all respects.

. . . . . . . . .


Copies mailed to:

David W. Phillips, Esq.
David R. Miles, Esq.
Hon. Richard J. O'Neill