[Cite as *State v. Gatewood*, 2012-Ohio-202.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                        :         C.A. CASE NO.    2010 CA 18

v.                                                       :         T.C. NO.    06CR1155

HERMAN R. GATEWOOD                  :         (Criminal appeal from
                                                                   Common Pleas Court)

    Defendant-Appellant                     :

                                                         :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___20th___ day of ___January___, 2012.

· · · · · · · · · ·

ANDREW R. PICEK, Atty. Reg. No. 0082121, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
    Attorney for Plaintiff-Appellee

SHAWN P. HOOKS, Atty. Reg. No. 0079100, 131 N. Ludlow Street, Suite 630, Dayton, Ohio 45420
    Attorney for Defendant-Appellant

· · · · · · · · · ·

DONOVAN, J.

    **{¶ 1}** Defendant-appellant Herman R. Gatewood appeals his conviction and sentence

for one count of possession of crack cocaine in excess of five grams, in violation of R.C. 2925.11(A), accompanied by a firearm specification; one count of failure to comply with the order or signal from a police officer, in violation of R.C. 2921.331(B), accompanied by a firearm specification; one count of illegal conveyance of a prohibited item onto the grounds of a detention facility, in violation of R.C. 2921.36(A)(2); one count of having a weapon while under disability, in violation of R.C. 2923.13(A)(3); and one count of carrying a concealed weapon, in violation of R.C. 2923.12(A)(2). Gatewood filed a timely notice of appeal with this Court on February 11, 2010.

I

{¶ 2} We initially note that the instant case has already been the subject of a direct appeal before this Court in *State v. Gatewood*, Clark App. No. 2008 CA 64, 2009-Ohio-5610 (hereinafter "*Gatewood I*"). Thus, we set forth the history of the case in *Gatewood I*, and repeat it herein in pertinent part:

{¶ 3} "On October 1, 2006, a man driving a gray vehicle pulled into the parking lot at the Knights of Pythias club in Springfield and fired shots into the air and into the windshield of another vehicle. Darwin Hicks, an off-duty detective, was present at the club. He called for uniformed officers and recorded the license plate number of the vehicle. The man left the club parking lot before the uniformed officers arrived, but he returned as Detective Hicks was discussing the incident with the responding officers. Detective Hicks identified Gatewood as the shooter. Officer Kranz approached Gatewood's car with his gun drawn and ordered him to put the car in park; Officer Pergram drew his weapon to assist and observed Gatewood reaching under the seat of his car. When Officer Pergram opened the

front passenger door of Gatewood's vehicle in order to turn off the car, Gatewood inched the car forward, and Pergram withdrew.   Gatewood then fled the scene in his vehicle.

{¶ 4} "Officers Pergram and Kranz pursued Gatewood in their cruisers with the lights and sirens activated.  A short distance away, Gatewood crashed his car and tried to flee on foot.   He was eventually stopped and arrested by Officer Pergram and other officers.  When the officers searched Gatewood's vehicle, they found a loaded, semi-automatic pistol slightly to the passenger side under the front seat.   When Gatewood was searched at the jail, officers discovered a bag of crack cocaine in his pocket.

{¶ 5} "Gatewood was indicted on one count of possession of crack cocaine, with a firearm specification; one count of failure to comply, with a firearm specification; one count of illegal conveyance of a weapon into a detention facility; one count of having a weapon under disability; and one count of carrying a concealed weapon, with a firearm specification.  The counts for illegal conveyance and having a weapon under disability were dismissed shortly before trial.

{¶ 6} "Gatewood initially hired an attorney to represent him, but that attorney filed a motion to withdraw when a dispute arose over the payment of his fees.  The trial court granted the motion to withdraw.  Gatewood refused to cooperate with an assessment to determine his eligibility to be represented by the public defender.  At the pretrial hearing, Gatewood did not ask to represent himself, but felt he had 'no choice' because he had no 'funds' and did not want a public defender.  The trial court discussed this option with Gatewood at some length, and Gatewood signed a waiver of counsel.   At Gatewood's trial two weeks later, he reaffirmed his intention to represent himself.

{¶ 7} "Gatewood was tried by a jury and appeared in court in jail attire. The State called several police officers and a forensic expert to testify in its case-in-chief; Gatewood did not call any witnesses or testify on his own behalf, although he did engage in voir dire and gave an opening statement and a closing argument. The jury found Gatewood guilty on the three remaining counts and on the firearm specifications, which were merged for purposes of sentencing. Gatewood was sentenced to five years of imprisonment for possession of crack cocaine, five years for failure to comply, and twelve months for carrying a concealed weapon, all to be served consecutively to a mandatory one year term on the firearm specification[,]" for an aggregate sentence of twelve years in prison.

{¶ 8} Gatewood appealed his conviction and sentence, and in an opinion issued on October 23, 2009, we reversed the judgment of the trial court. *Gatewood*, 2009-Ohio-5610. Specifically, we concluded that the trial court erred in failing to inform Gatewood of his right to appear at his jury trial in clothing other than his jail attire and in failing to inquire as to Gatewood's ability to obtain other clothing. Id. Additionally, we held that the trial court provided insufficient information to allow Gatewood to knowingly and intelligently waive his constitutional right to the assistance of counsel. Id.

{¶ 9} Upon remand, the trial court returned Gatewood's case to its active docket on October 27, 2009. On November 3, 2009, the trial court appointed counsel to represent Gatewood in a new trial for one count of possession of crack cocaine, with a firearm specification; one count of failure to comply, with a firearm specification; and one count of carrying a concealed weapon, with a firearm specification. Gatewood subsequently filed a motion for a competency evaluation on November 9, 2009, and changed his plea to not

guilty by reason of insanity. On December 14, 2009, the trial court found that Gatewood was competent to stand trial. A trial date was set for January 26, 2010. We note that Gatewood remained in jail pending the re-trial.

{¶ 10} On January 21, 2010, the State re-indicted Gatewood on the previously dismissed counts for illegal conveyance and having a weapon while under disability. Gatewood filed a motion to dismiss the re-indicted counts, arguing a violation of his right to speedy trial specifically as to those counts. The trial court overruled Gatewood's motion. The case proceeded to jury trial on January 27, 2010, after which Gatewood was found guilty of possession of crack cocaine in excess of five grams, accompanied by a firearm specification; failure to comply with the order or signal from a police officer, accompanied by a firearm specification; illegal conveyance of a prohibited item onto the grounds of a detention facility; having a weapon while under disability; and carrying a concealed weapon. The trial court sentenced Gatewood to five years in prison on the count of possession of crack cocaine, in addition to one year for the firearm specification; five years for failure to comply, plus one year for the firearm specification; five years for illegal conveyance; five years for having a weapon while under disability; and eighteen months for carrying a concealed weapon. With the exception of the firearm specifications which were merged, the trial court ordered that all of the sentences be served consecutively for an aggregate sentence of twenty-two and one-half years in prison.

{¶ 11} It is from this judgment that Gatewood now appeals.

II

{¶ 12} Gatewood's first assignment of error is as follows:

{¶ 13} "THE TRIAL COURT'S DECISION OVERRULING THE MOTION TO DISMISS THE RE-INDICTED CHARGES RESULTED IN MR. GATEWOOD'S CONSTITUTIONAL RIGHTS BEING VIOLATED AS NEARLY TWO YEARS LAPSED BETWEEN THE DISMISSAL OF THE COUNTS AND WHEN THEY WERE RE-INDICTED FOLLOWING THE SUCCESSFUL APPEAL."

{¶ 14} In his assignment, Gatewood contends that his constitutional right to a speedy trial was violated when the trial court overruled his motion to dismiss the re-indicted counts for illegal conveyance and having a weapon while under disability. Specifically, Gatewood argues that because the re-indicted charges arose from the same set of facts as those in the original indictment filed in October, 2006, the re-indicted charges should have been dismissed prior to the second trial. In an entry filed on January 27, 2010, the trial court overruled Gatewood's motion to dismiss, but did not explain the basis of its decision in that regard.

{¶ 15} At the outset, we note that the standard for reviewing claims of speedy trial violations is "whether the trial court's ruling is supported by the evidence or whether the court abused its discretion by making a finding manifestly against the weight of the evidence." See, e.g., *State v. Humphrey,* Clark App. No. 2002 CA 30, 2003-Ohio-3401, ¶21, citations omitted. Moreover, "[a]n abuse of discretion means more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Id., citing *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 482 N.E.2d 1248.

{¶ 16} "The right to a speedy trial is guaranteed to all state criminal defendants by

the Sixth and Fourteenth Amendments to the United States Constitution *** and by Section 10, Article I of the Ohio Constitution." *State v. Riley* (2005), 162 Ohio App.3d 730, 735, 834 N.E.2d 887, 2005-Ohio-4337.  The Ohio General Assembly enacted the provisions in R.C. § 2945.71 et seq. in an effort to prescribe "reasonably speedy trial periods consistent with these constitutional provisions." *State v. O'Brien* (1987), 34 Ohio St.3d 7, 8, 516 N.E.2d 218.  "The speedy trial provisions constitute a rational effort to enforce the constitutional right to a speedy trial and must be strictly enforced by the courts." *State v. Pachay* (1980), 64 Ohio St.2d 218, 416 N.E.2d 589, syllabus.

{¶ 17} R.C. 2945.71(C)(2) states that defendant charged with a felony "[s]hall be brought to trial within two hundred seventy [270] days after the person's arrest."  "For purposes of computing time under divisions ***(C)(2) *** of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. § 2945.71(E).  The time to bring a defendant to trial can be extended for any of the reasons enumerated in R.C. § 2945.72, including "any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused," and "the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. §§ 2945.72(E) & (H).

{¶ 18} As we recently held in *State v. Kerby*, Clark App. No. 2006 CA 73, 2007-Ohio-3810, Ohio's speedy trial statute, R.C. 2945.71, does not apply to criminal convictions that have been overturned on appeal.  Rather, we held that the standard to be applied is one of reasonableness under federal and state constitutions. Id.  The time

limitation for bringing the appellant to trial is governed by the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution. "In *Barker v. Wingo* (1972), 407 U.S. 514, 523, 92 S.Ct. 2182, the court determined this to be 'a reasonable period consistent with constitutional standards.'" *State v. Hull* (2006), 110 Ohio St.3d 183, 187, 2006-Ohio-4252.

{¶ 19} Initially, we note that the counts for illegal conveyance and having a weapon while under disability were dismissed by the State immediately prior to Gatewood's first trial on February 15, 2008. Pursuant to our holding in *Kerby*, the speedy trial statute, R.C. 2945.71, does not apply to remanded charges following a defendant's successful appeal. 2007-Ohio-3810. Because they were dismissed, however, neither dismissed count was at issue on appeal in *Gatewood I*. Accordingly, those two counts were still subject to the 270-day requirement in R.C. 2945.71(C)(2). The following speedy trial computation, therefore, only applies to the two dismissed counts.

{¶ 20} Gatewood was originally indicted on October 10, 2006, and was released on his own recognizance. The trial court scheduled a criminal pre-trial conference on January 3, 2007. The trial court also scheduled Gatewood's jury trial on February 13, 2007. Gatewood failed to appear for the pre-trial conference, and the trial court issued a warrant for his arrest on January 4, 2007, tolling Gatewood's speedy trial time. Between October 10, 2006, and January 4, 2007, a total of eighty-six days accumulated towards Gatewood's speedy trial time, as he was not incarcerated.

{¶ 21} Gatewood was subsequently arrested on January 13, 2007, and remained in jail until January 18, 2007, when he posted bond. Generally, when computing how much

time has run against the state under R.C. 2945.71, we begin with the day *after* the accused was arrested. *State v. Broughton* (1991), 62 Ohio St.3d 253, 260. Gatewood was in jail for five days; thus, fifteen days counted against his speedy trial time (three-for-one applied). On February 13, 2007, Gatewood's attorney failed to appear for trial, an event which tolled Gatewood's speedy trial time. From January 18, 2007, until February 13, 2007, twenty-seven days accumulated towards Gatewood's speedy trial time.

{¶ 22} On February 26, 2007, the trial court held Gatewood's attorney in indirect contempt for failing to appear for trial. The trial court subsequently permitted Gatewood's attorney to withdraw and ordered Gatewood to secure new counsel in an entry issued on March 12, 2007. The trial court also scheduled Gatewood's trial for April 11, 2007. Gatewood failed to appear for trial, and the trial court issued a warrant for his arrest on April 12, 2007. Gatewood was arrested December 12, 2007, but he did not appear before the trial court until February 1, 2008, when he stated his intention to proceed pro se. The trial court set bond at $50,000.00 and scheduled Gatewood's trial for February 15, 2008. From February 13, 2007, until February 1, 2008, Gatewood's speedy trial time was tolled. On February 15, 2008, the State dismissed the counts for illegal conveyance and having a weapon while under disability. Between February 1, 2008, and February 15, 2008, fifteen days elapsed while Gatewood was incarcerated, thus, forty-five days counted against his speedy trial time.

{¶ 23} We issued our decision in *Gatewood I* on October 23, 2009. On October 27, 2009, the trial court placed Gatewood's case back on its active docket. The State, however, did not re-indict Gatewood for the dismissed counts until January 21, 2010. The trial court

had previously scheduled Gatewood's jury trial for January 27, 2010. On January 25, 2010, Gatewood filed his motion to dismiss the two re-indicted counts for violating his right to speedy trial. Gatewood's motion tolled the speedy trial time. Between January 21, 2010, and January 25, 2010, five days elapsed while Gatewood was incarcerated; thus, fifteen days counted towards his speedy trial time. For the purposes of R.C. 2945.71(C)(2), only a total of 188 days accumulated towards Gatewood's statutory speedy trial time with respect to the counts for illegal conveyance and having a weapon while under disability. Accordingly, Gatewood's statutory right to a speedy trial regarding the two dismissed, and later re-indicted, counts was not violated. Our analysis, however, does not end here.

{¶ 24} Upon review, we find that the State's decision to delay the re-indictment of the counts for illegal conveyance and having a weapon while under disability was "presumtively prejudicial" to Gatewood. The standard to be applied is one of reasonableness under federal and state constitutions. The time limitation for bringing the appellant to trial is governed by the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution. "In *Barker v. Wingo* (1972), 407 U.S. 514, 523, 92 S.Ct. 2182, the court determined this to be 'a reasonable period consistent with constitutional standards.'" *Hull*, 110 Ohio St.3d at 187, 852 N.E.2d 706, 710.

{¶ 25} Four factors are to be assessed in determining whether an accused had been constitutionally denied a speedy trial: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right to speedy trial; and 4) the prejudice to the defendant. *Id.*, citing *Barker*, 407 U.S. at 530.

{¶ 26} "The length of the delay is to some extent a triggering mechanism. Until

there is delay *which is presumptively prejudicial*, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-531.

{¶ 27} In the instant case, we conclude that the delay of Gatewood's re-indictment until approximately two years after the first trial was presumptively prejudicial. "[C]ourts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v. United States* (1992), 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520. Our decision in *Gatewood I* was not issued until October 23, 2009. The date the case returned to the trial court's active docket was on October 27, 2009. The delay between October 27, 2009, and January 21, 2010, was approximately eighty-six days, an additional delay beyond the original dismissal. On January 21, 2010, the dismissed counts were re-indicted, and Gatewood's trial on remand was set for January 27, 2010. The Ohio Supreme Court's holding in *State v. Cargile*, 123 Ohio St.3d 343, 2009-Ohio-4939, was issued on September 24, 2009. The State argues that the *Cargile* decision directly affected its decision whether to re-indict Gatewood for illegal conveyance on January 21, 2010. The State's reliance on *Cargile*, however, is misplaced. *Cargile* was issued on September 24, 2009, and the State does not explain why it chose to wait approximately four months after the decision was issued to re-indict Gatewood. The State further argues that it relied on this Court's holding in *State v. Cherry*, 171 Oho App.3d 375, 2007-Ohio-2133, regarding its decision to wait to re-indict Gatewood for having a weapon while under disability until January 21, 2010. Again, the State's argument is undermined by the fact that the *Cherry*

decision was issued on May 4, 2007. The State was unable to produce any explanation as to why it chose to wait until January 21, 2010, to re-indict Gatewood for having a weapon while under disability. Interestingly, *Cherry* was decided approximately nine months before the State originally dismissed the count for having a weapon while under disability on February 15, 2008. Thus, we are not persuaded by the State's arguments regarding its decision to wait for approximately two years before re-indicting Gatewood for illegal conveyance and having a weapon while under disability. It is apparent that the State's decision to re-indict Gatewood six days before trial was done for the purpose of creating a tactical advantage prior to trial. The State also conceded during oral arguments that it re-indicted Gatewood for the dismissed counts because he refused to enter a plea to other counts in the indictment. "A governmental delay motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government." *U.S. v. Marion* (1971), 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468.

**{¶ 28}** We note that Gatewood did nothing to contribute to the State's lack of diligence. After Gatewood filed his motion to dismiss, the burden was on the State to establish a sound rationale regarding its decision to wait to re-indict Gatewood. In our view, the State failed to meet its burden in that regard. Accordingly, we hold that the delay of Gatewood's re-indictment in this case is presumptively prejudicial and is, therefore, constitutionally unreasonable such that his right to speedy trial was violated.

**{¶ 29}** Gatewood's first assignment of error is sustained in part and overruled in part.

III

**{¶ 30}** Gatewood's second assignment of error is as follows:

{¶ 31} "THE CONVICTION FOR ILLEGAL CONVEYANCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION BECAUSE THERE WAS NO EVIDENCE THAT ANY WARNINGS WERE GIVEN TO MR. GATEWOOD OR THAT HE MADE AN AFFIRMATIVE DENIAL OF POSSESSION."

{¶ 32} In his second assignment, Gatewood argues that there was insufficient evidence to support his conviction for illegal conveyance because no evidence was adduced which established that Gatewood was warned by the arresting officer regarding the consequences of bringing illegal drugs into jail. Additionally, Gatewood asserts that no evidence was presented which established that he ever specifically denied possessing drugs prior to being brought to jail. Gatewood also asserts that his conviction for illegal conveyance was against the manifest weight of the evidence.

{¶ 33} In light of our disposition with respect to Gatewood's first assignment of error, his second assignment of error is rendered moot.

IV

{¶ 34} Gatewood's third assignment of error is as follows:

{¶ 35} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SUSTAINED THE STATE'S CHALLENGE OF A POTENTIAL JUROR FOR CAUSE WHEN THAT POTENTIAL JUROR STATED HE WOULD HAVE TO EVALUATE THE TESTIMONY OF THE POTENTIAL WITNESSES."

{¶ 36} In his third assignment, Gatewood argues that the trial court abused its discretion when it sustained the State's challenge for cause of a potential juror based on

statements he made regarding his bias against police officers in Springfield, Ohio.

{¶ 37} A person called as a prospective juror may be challenged for cause if that person demonstrates bias toward the defendant. R.C. 2945.25; Crim.R. 24(B). "Bias" is a predisposition to decide a case or an issue in a certain way, which does not leave the mind perfectly open to conviction. Black's Law Dictionary (Fifth Ed.). A trial court's ruling on a challenge for cause will not be disturbed on appeal absent an abuse of discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. *State v. Adams* (1980), 62 Ohio St.2d 151.

{¶ 38} The State challenged the potential juror for cause after the following exchange during voir dire:

{¶ 39} "The State: Is there any reason that you wouldn't be able to serve on our jury today?

{¶ 40} "Juror #4: I don't think so but early on in my career I worked in broadcasting and in two-way communications, and I worked in some other areas there associated with public service, and I worked a lot with the police and fire and other people in Geauga County and Cuyahoga County, and working on their weight stations and working on the dispatch to guys on their radio and even went out directing traffic in the snowstorm.

{¶ 41} "I know that there a lot of heroic police officers and a lot of people just putting in their time.

{¶ 42} "Q: I think you'll find –

{¶ 43} "A: I expect if they give testimony, I will listen very carefully *and I'll be*

*highly critical*. I lived in Springfield about nine years. I lived over on Light Street, bought a cheap house and fixed it up, and I got a lot of attention from the police in that neighborhood, and *I'm going to be a little biased, you know, I'm going to be really critical about what these guys have to say*.

{¶ 44} "Q: Well, let's talk about that. What do you mean you got a lot of attention from the police in that area?

{¶ 45} "A: I got pulled over and stopped and asked if I had waved to a little girl, and I didn't. I had bought fish, and I took him in the house and showed him the fish in the aquarium.

{¶ 46} "Q: Oh my. And you said –

{¶ 47} "A: And I have been down in the park with my turbo charged Trans-Am and a guy pulled me over and searched my car, and he cited me for failure to display my license on the front bumper. I had to go home and build a frame to hold my license. I didn't have a license plate.

{¶ 48} "Everywhere I went someone was stopping me and when I was in Cleveland and Akron and Ashley, Ohio, I never had a problem. I just moved out of town because of all the attention I was getting for being in Springfield.

{¶ 49} "Q: Well, do you think that that might give you a little bit of bias against the police here?

{¶ 50} "A: I'm going to pay close attention.

{¶ 51} "Q: I mean, I guess –

{¶ 52} "A: Maybe more attention that other people.

**{¶ 53}** "Q: *So that might suggest that you might have a small bias even though* –

**{¶ 54}** "A: *The possibility is there*."

**{¶ 55}** Upon further questioning, the potential juror stated that he recognized the name of one of the officers who was testifying as possibly being involved in his prior negative interactions with the Springfield police. The State subsequently made a challenge for cause, and the trial court, after hearing from both parties, sustained the challenge and dismissed the potential juror.

**{¶ 56}** As indicated by the exchange cited above, it was apparent from Juror #4's responses to the State's inquiries that he was specifically biased against police officers in Springfield, Ohio, and would be highly critical, if not dismissive, of their testimony as it related to the guilt of the accused. Juror #4's candid responses to the State's inquiries raised legitimate doubts regarding his ability to consider the testimony of police officers free from bias. See *State v. Caldwell*, Franklin App. No. 09AP-685, 2010-Ohio-1324 (excluding for cause, a juror who expressed a belief that police officers are biased against black defendants). Based on the record before us, we conclude that the trial court did not abuse its discretion when it sustained the State's challenge for cause of Juror #4.

**{¶ 57}** Gatewood's third assignment of error is overruled.

v

**{¶ 58}** Gatewood's fourth assignment of error is as follows:

**{¶ 59}** "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED MR. GATEWOOD TO THE MAXIMUM ON ALL COUNTS AND ORDERED THAT THEY BE SERVED CONSECUTIVELY WHEN THERE WAS NO

EVIDENCE OF ANY PRIOR RECORD AND THE COURT USED IMPROPER FACTORS IN FASHIONING ITS SENTENCE."

{¶ 60} In his fourth assignment, Gatewood contends that his sentence was improper because the trial court failed to affirmatively address the relevant sentencing statutes during the dispositional hearing. In the alternative, Gatewood argues that the trial court abused its discretion when it considered improper factors in determining his sentence.

{¶ 61} "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense." R.C. 2929.11(A). A court that imposes a sentence for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. R.C. 2929.12(A). "Although [*State v.*] *Foster* [109 Ohio St.3d 1, 2006-Ohio-856] eliminated judicial fact-finding, courts have not been relieved of the obligation to consider the overriding purposes of felony sentencing, the seriousness and recidivism factors, or the other relevant considerations set forth in R.C. 2929.11, 2929.12, and 2929.13." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, ¶ 25.

{¶ 62} We review a felony sentence using a two-step procedure. *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 4. "The first step is to 'examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.'" *State v. Stevens,* 179

Ohio App.3d 97, 2008-Ohio-5775, ¶ 4, quoting *Kalish* at ¶ 4. "If this step is satisfied, the second step requires that the trial court's decision be 'reviewed under an abuse-of-discretion standard.'" Id. Generally, abuse of discretion is an "appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence." *State v. Money*, Clark App. No. 2009CA119, 2010-Ohio-6225, ¶13 (internal citations omitted).

{¶ 63} As we recently explained in *State v. Watkins*, 186 Ohio App.3d 619, 2010-Ohio-740:

{¶ 64} "Sentencing errors assigned regarding the trial court's application of R.C. 2929.11 and 2929.12 are reversible or modifiable only upon a finding by clear and convincing evidence that the sentence is contrary to law. *State v. Hawkins,* Greene App. No. 06CA79, ¶8. See, also, *State v. Bowshier,* Clark App No. 08-CA-58, 2009-Ohio-3429, ¶6, citing *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912; *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855. 'Contrary to law means' that a sentencing decision manifestly ignores an issue or factor which a statute requires a court to consider. *Hawkins,* supra, at ¶8, citing *State v. Lofton,* Montgomery App. No. 19852, 2004-Ohio-169, ¶11.

{¶ 65} "When a trial court imposes a sentence that falls within the applicable statutory range, the court is required to consider the purposes and principles set forth in R.C. 2929.11, as well as the recidivism factors enumerated in R.C. 2929.12. *Hawkins,* supra, at ¶8, citing *Mathis,* supra. However, the court need not make any specific findings in order to demonstrate its consideration of those factors. Id. citing *State v. Arnett,* 88 Ohio St.3d 208, 215, 2000-Ohio-301; *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-855, ¶42."

**{¶ 66}** In the instant case, it is undisputed that the trial court did not specifically mention either R.C. 2929.11 or R.C. 2929.12 at the sentencing hearing. The court, however, did reference both statutes in its judgment entry. A trial court speaks through its journal entries. *State v. Brooke,* 113 Ohio St.3d 199, 2007-Ohio-1533, ¶47, citation omitted. In its judgment entry, the trial court stated as follows:

**{¶ 67}** "The Court considered the record, oral statements of counsel, the defendant's statement, the defendant's prior criminal record, the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and has balanced the seriousness and recidivism factors [set forth in] Ohio Revised Code Section 2929.12."

**{¶ 68}** Because the trial court affirmatively stated in its judgment entry that it considered the factors set out in both R.C. 2929.11 and R.C. 2929.12 in imposing Gatewood's sentence, that sentence is not contrary to law. *Watkins*, 186 Ohio App.3d at 630.

**{¶ 69}** Having concluded that Gatewood's sentence is not contrary to law, we must now review his sentence under an abuse of discretion standard. Id. at 631. Gatewood asserts that certain statements made by the trial court establish that the court considered improper factors when it sentenced him. The trial court abuses its discretion when it considers an improper factor in its sentencing analysis. *State v. Davis*, Washington App. No. 09CA28, 2010-Ohio-555.

**{¶ 70}** R.C. 2929.12(A) mandates that, in exercising its "discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any

other factors that are relevant to addressing those purposes and principles of sentencing." Accordingly, the trial court had discretion to consider additional factors, but only if those factors are relevant to the proceedings.

{¶ 71} Gatewood asserts that the following statements made by the trial court at his disposition clearly establish that the trial court considered improper factors when it sentenced him:

{¶ 72} "The Court: *** So what's before the Court is an individual who at some point in his life decided to engage in either the use or distribution of crack cocaine or both. Noting for the record that he was convicted of only possession and not trafficking; however, it is a significant amount of crack cocaine so it makes the Court wonder if perhaps the crack cocaine was not just for personal use. [Disposition, pgs., 4-5]

{¶ 73} "***

{¶ 74} "The Court has a responsibility to protect the public. It's a miracle that nobody was seriously injured or killed, as a result of the defendant's conduct." [Disposition, pg. 5].

{¶ 75} It is vital to avoid both the reality and "perception that no clear standards are being applied, and that the rule of law is imperiled by sentences imposed for no discernible reason other than the   subjective reactions of the sentencing judge." *State v. Nichols*, Clark App. No. 2010 CA 60, 2011-Ohio-4671, quoting *Harmelin v. Michigan* (1991), 501 U.S. 957, 1007, 111 S.Ct. 2680, 115 L.Ed.2d 836.   We have recently held that a sentence that is appropriate for a particular criminal offense may be mitigated in recognition of a defendant's choice to waive a constitutional right and co-operate with the authorities. *State v. Smith*,

Clark App. No. 08-CA-37, 2009-Ohio-1041. Conversely, the appropriate sentence just cannot be enhanced as a result of a decision by a defendant who has been equally culpable of an equivalent offense to stand on that defendant's rights. Id.

{¶ 76} In the instant case, the trial court penalized Gatewood for not "taking responsibility and pleading guilty." [Disposition, pg. 5]. We find that it was improper for the trial court to opine that, based on the amount of contraband found in his possession, Gatewood may have been trafficking in crack cocaine, despite the fact that he was not charged with that offense.

{¶ 77} Additionally, although R.C. 2929.11(A) states that the overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender, the trial court seems to have ignored the fact that, in order to achieve those purposes, it was required to consider, among other things, rehabilitating the offender. *State v. Nichols*, Clark App. No. 2010 CA 60, 2011-Ohio-4671. "[T]he sentencing judge [should] consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States* (2011), _____ U.S. _____, 131 S.Ct. 1229, 1240, 179 L.Ed.2d 196, citing *Koon v. United States* (1996), 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392. Upon review, we conclude that the trial court abused its discretion when it sentenced Gatewood by relying on improper factors which evidenced a vindictive sentence imposed in retaliation for his decision to exercise his constitutional rights.

{¶ 78} Gatewood's fourth assignment of error is sustained.

VI

{¶ 79} Gatewood's fifth and final assignment of error is as follows:

{¶ 80} "THE CUMULATIVE ERRORS THAT TOOK PLACE THROUGHOUT THE TRIAL DEPRIVED MR. GATEWOOD OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.

{¶ 81} "[S]eparately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. *State v. Madrigal*, 87 Ohio St.3d 378, 721 N.E.2d 52, 2000-Ohio-448. In order to find 'cumulative error' present, we must first find that multiple errors were committed at trial. Id. at 398, 721 N.E.2d 52. We must then find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. *State v. Thomas*, Clark App. No. 2000-CA-43, 2001-Ohio-1353." *State v. Kelly*, Greene App. No. 2004-CA-20, 2005-Ohio-305, ¶ 33. "Where no individual, prejudicial error has been shown, there can be no cumulative error. *State v. Blankenship* (1995), 102 Ohio App.3d 534, 557, 657 N.E.2d 559." *State v. Jones*, Montgomery App. No. 20349, 2005-Ohio-1208, ¶ 66. Where the court found only one prejudicial error, there was no cumulative error that deprived defendant of a fair trial. *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381.

{¶ 82} With the exception of our decision sustaining Gatewood's first and fourth assignments of error, we have found no other errors to be present. Accordingly, we cannot find cumulative error in the instant case.

{¶ 83} Gatewood's final assignment of error is overruled.

VII

{¶ 84} Gatewood's first and fourth assignments of error having been sustained, his

convictions for illegal conveyance and having weapons while under disability are reversed and vacated, and this matter is remanded to the trial court for re-sentencing on the remaining counts.   In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Andrew R. Picek
Shawn P. Hooks
Hon. Douglas M. Rastatter