[Cite as *State v. Lackey*, 2015-Ohio-5492.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26293 |
| | : | |
| v. | : | Trial Court Case No. 2013-CR-1111/2 |
| | : | |
| EDDIE M. LACKEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of December, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        *Attorney for Plaintiff-Appellee*

BAHJAT M. ABDALLAH, Atty. Reg. No. 0078504, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
        *Attorney for Defendant-Appellant*

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendant-Appellant, Eddie Lackey, appeals from his conviction and sentence on Conspiracy to Commit Attempted Aggravated Arson and Attempted Aggravated Arson. After the trial court merged the convictions, it sentenced Lackey to six years in prison.

{¶ 2} In support of his appeal, Lackey contends that the trial court violated his speedy trial rights by failing to Dismiss the "B" Indictment. Lackey further contends that the court deprived him of a fair trial and due process of law by failing to sever the trials for the A and B indictments. Finally, Lackey contends that the trial court deprived him of a fair trial and due process of law by allowing the State to amend the indictment at trial.

{¶ 3} We conclude that no error occurred in the trial court proceedings. In the first place, the trial court did not violate Lackey's speedy trial rights. Where a subsequent indictment is issued, the State is not subject to the speedy-trial timetable of the initial indictment if the additional criminal charges arise from facts different from the original charges.

{¶ 4} The trial court also did not err in denying Lackey's motion for relief from joinder. As an initial matter, the State could have introduced evidence of the joined offenses in separate trials as "other acts" evidence under Evid.R. 404(B). In addition, the evidence in both cases was simple and direct.

{¶ 5} Finally, the trial court did not err in allowing the State to amend the B Indictment after the court dismissed the charge in the A Indictment. The amendment

was made to conform to the evidence, and was not a material change.   Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 6} At about 12:30 a.m. on April 9, 2013, Nozad Ibrahim ("Tony") was working as a clerk at a Sunoco gas station located at 3900 Salem Avenue in Dayton, Ohio.   Tony was outside the business and saw two individuals walking next to the dumpster.   They ran away when they saw him, and about 15 to 20 minutes later, Tony saw one of the men open the door, light a 24-oz Budweiser beer bottle filled with gas, and throw it in the door.   Luckily, the bottle did not break and the store did not catch on fire.   A partially burned dollar bill was found on the floor.   Gauze and a cigarette butt were found inside the bottle.

{¶ 7} Tony called the police, who were dispatched to the scene.   On the way to the scene, Officer Jason Berger saw a male (later identified as Joe Whitfield) walking in the vicinity.   After receiving a description of the suspects, Berger drove back to where he had seen Whitfield.   Berger then saw Whitfield and another man walking behind a carwash.   As soon as Berger pulled behind the carwash, the men began running away.   Ultimately, Berger was able to apprehend Whitfield, who had a strong odor of gasoline about him.   Berger drove Whitfield to the gas station, where Tony stated that he was 60% certain that Whitfield was the one who had thrown the bottle.   Whitfield was arrested and searched, and the police found a piece of torn gauze in his pocket.

{¶ 8} A second arson incident occurred while Whitfield was in custody.   At about 12:30 a.m. on April 12, 2013, another attempted arson occurred at the Sunoco gas station.   After being told by a customer that the building was on fire, the clerk, Tony, went

behind the building and saw that the back door was on fire. Tony put out the fire and the police arrived at about 1:45 a.m. There was a strong odor of gasoline, as well as charring and flaking on the back door.

{¶ 9} About an hour later, the police arrived at Lackey's home. They were acting on information from a potential witness who had allegedly seen men running from the station and had gotten a license plate number. Lackey allowed the police to search his vehicle for evidence and fingerprints. Lackey claimed that he had arrived home at around 10:00 p.m., and had not been out since. There was no odor of gasoline about the vehicle or on Lackey, and the police did not find any incriminating evidence, like gauze or beer bottles. However, the hood of the vehicle was warm to the touch and there were wet spots on the vehicle. (It had been raining that night.)

{¶ 10} Both the April 9 and April 12, 2013 arson cases were assigned to Detective Melanie Phelps-Powers. On April 16, 2013, the clerk, Tony, picked out the second person from the April 9, 2013 arson, based on a photo spread. The person he selected was not Lackey, nor was it the photo of any individual who was ever connected to the case.

{¶ 11} Whitfield gave conflicting statements to the police. Phelps-Powers first interviewed Whitfield on April 17, 2013. At that time, Whitfield told her that he had nothing to do with the April 9, 2013 arson.

{¶ 12} Whitfield was charged with the April 9, 2013 arson. On April 22, 2013, Whitfield told Phelps-Powers that Lackey had picked him up at his house around midnight on April 9, 2013, and that they were going to a studio to record music. Whitfield had been drinking before he was picked up, and had a few drinks before passing out. He

stated that when he woke up, another guy had a gun and was going to throw a fire bomb at the gas station. Whitfield told the detective that the motive was to "shut down" the store that night. In the meantime, Lackey had been arrested on April 19, 2013, solely in connection with the April 12, 2013 arson. The complaint against Lackey was dismissed on April 29, 2013, however.

{¶ 13} Evidence eventually obtained from Lackey's cell phone records for the night of the April 9, 2013 arson showed calls between Lackey and Whitfield's girlfriend, Latoya, at 4:36 a.m. and a few hours later the same day. Lackey was a friend of Latoya's family and had met Whitfield through Latoya. As a result of DNA analysis on the cigarette butt that was found in the bottle used in the April 9, 2013 arson, the police also identified an individual named Vaughn Erwin as a potential match. Erwin was Lackey's nephew, and they both worked at King's Furniture Store.

{¶ 14} Phelps-Powers' theory of the case was that the arsons occurred because of a money dispute between the owner of King's Furniture and Sam, the owner of the Sunoco station. In March 2014, Phelps-Powers visited Whitfield in prison, where he was much more cooperative than he had been previously. At that time, Whitfield positively identified Erwin as the person who had been with him and Lackey the night of the April 9, 2013 arson. During this visit, Whitfield also told Phelps-Powers about a confrontation between King's Furniture and Sunoco.

{¶ 15} In addition, Whitfield stated that on the night of the April 9, 2013 arson, he was driving around in Lackey's car, smoking marijuana. The bottle of gasoline was in the car. According to Whitfield, Lackey told him that if he did this, he'd "be straight." At trial, Whitfield indicated that he interpreted Lackey's statement to mean that if Whitfield

threw the bottle into the station, he would get some money to take care of his family.

{¶ 16} Whitfield also stated at trial that the plan was that he and the other person with him (whom he alternately admitted and denied having previously identified as Erwin) would get back together with Lackey after the April 9, 2013 arson. However, despite Erwin's attempts to call Lackey, Lackey was not at the spot where they needed him to be. Whitfield and Erwin then got separated because Erwin started running, and Whitfield was apprehended.

{¶ 17} As was noted, the complaint against Lackey was dismissed in late April 2013. In mid-September 2013, Lackey was indicted for Aggravated Arson in connection with the arson that occurred on April 12, 2013. After Phelps-Powers visited Whitfield in jail in March 2014, the State filed Indictment B, charging Lackey with two additional crimes – Conspiracy to Commit Aggravated Arson and Attempted Aggravated Arson, both involving the arson that occurred on April 9, 2013.

{¶ 18} After the State presented its case, the trial court granted Lackey's Crim.R. 29 motion to dismiss the A Indictment, which pertained to the April 12, 2013 arson. The remaining counts in the B Indictment (for the April 9, 2013 attempted arson) were submitted to the jury, which found Lackey guilty on both counts. As was noted, Lackey was sentenced accordingly. He now appeals from his conviction and sentence.


II. Alleged Violation of Speedy Trial Rights

{¶ 19} Lackey's First Assignment of Error states that:

> The Court's Failure to Dismiss Appellant's B Indictment Was in Direct
>
> Violation of Appellant's Speedy Trial Rights.

{¶ 20} Under this assignment of error, Lackey contends that the trial court erred in overruling his motion to dismiss the B Indictment, which was filed on March 25, 2014. Lackey argues, as he did in the trial court, that the B Indictment arose from the same incident and facts as the A Indictment, which was filed on September 18, 2013. The trial court rejected this interpretation, concluding instead that the events involved in the two cases, while connected, had very different facts and required different evidence and witnesses. The court also held that even if the speedy trial time for the first indictment applied, Lackey was still brought to trial within the appropriate time.

### A. Whether the Two Cases Involve Different Facts

{¶ 21} "The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution * * *." *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989). In Ohio, these rights are also protected by Section 10, Article I of the Ohio Constitution, and are enforced by R.C. 2945.71 et seq. *Id.* Under 2945.71(C)(2), defendants charged with felonies must be brought to trial within 270 days after their arrest, subject to any applicable tolling provisions in R.C. 2945.72.

{¶ 22} Generally, "[t]he standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72." (Citation omitted.) *State v. Crosby*, 10th Dist. Franklin No. 12AP-348, 2012-Ohio-6202, ¶ 6. *Accord State v. Ellington*, 2d Dist. Montgomery No. 26335, 2015-Ohio-2058, ¶ 12. We have also held, however, that "the standard for reviewing claims of speedy trial violations is 'whether the trial court's ruling is supported by the evidence or whether the court abused its discretion by making a

finding manifestly against the weight of the evidence.' " *State v. Gatewood*, 2d Dist. Clark No. 2010 CA 18, 2012-Ohio-202, ¶ 15, citing *State v. Humphrey*, 2d Dist. Clark No. 2002 CA 30, 2003-Ohio-3401, ¶ 21. These holdings are not inconsistent, as there will be occasions when a factual inquiry is needed, and we would review the court's findings in those instances under typical standards applied to a fact-finder's resolution of disputed facts.

{¶ 23} The initial consideration is whether the speedy trial timetable for the first indictment applies to the second indictment. In this regard, the Supreme Court of Ohio has held that:

> In issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment.

*State v. Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883 (1997), syllabus.

{¶ 24} In interpreting *Baker*, we have stressed that "[a]dditional crimes based on different facts should not be considered as arising from the same sequence of events for the purpose of speedy trial computation." *State v. Matthews*, 2d Dist. Montgomery No. 23953, 2011-Ohio-2067, ¶ 14. Consequently, " 'if the facts of the offenses in multiple indictments are truly different – i.e., they arise from different circumstances, require different evidence, and are otherwise distinguishable in a significant way – the State is permitted to charge them separately even if all of the facts are known to the [S]tate when the initial indictment is filed.' " *State v. Hyde*, 2d Dist. Clark No. 2013 CA 41, 2014-Ohio-1278, ¶ 15, quoting *State v. Jones*, 2d Dist. Montgomery No. 21974, 2008-Ohio-1603,

¶ 10.

{¶ 25} After reviewing the record, we agree with the trial court that the events involved in the two indictments, while connected, involve different facts and witnesses, such that the speedy trial time for the A Indictment should not be applied to the later-filed charges.

{¶ 26} Although the two events occurred at the same location, they took place on different dates, involved different parts of the building (and, therefore, different physical evidence), and involved different witnesses. For example, the store clerk witnessed the first attempted arson, but did not witness the second; instead, the witness to the second arson was a bystander. In this regard, the situation is similar to that in *Hyde*, where the defendant robbed two Rite-Aid pharmacies a few days apart. Although *Hyde* involved two separate pharmacies, the cases are otherwise factually similar. *See Hyde* at ¶ 16-18 (Indicating that while the defendant's methodology of the crimes was the same, the witnesses and evidence were likely to be different, such that jail time from one charge did not apply to the other for purposes of the triple-count provision in R.C. 2945.71(E)).

{¶ 27} Accordingly, the trial court correctly held that the State was not subject to the speedy-trial timetable of the first indictment. The second indictment was filed on March 25, 2014, and Lackey had never been jailed in connection with the events pertaining to the second indictment. As a result, the motion that was filed on April 7, 2014, was well within the 270 day time requirement in R.C. 2945.71(C)(2).

B. Assuming that the Speedy-Trial Timetable of the First Indictment

Applies, Did a Violation Occur?

**{¶ 28}** The trial court also concluded that even if it used the date of the first indictment (September 18, 2013), no speedy trial violation had occurred, since 270 days had not yet elapsed after that indictment.   In choosing this date, the trial court observed that it could not credit Lackey with the time when Lackey was arrested and jailed in connection with the April 12, 2013 arson.   The court reasoned that when Lackey was arrested, the State did not know of Lackey's alleged involvement in the April 9, 2013 arson.

**{¶ 29}** Generally, when we compute "how much time has run against the state under R.C. 2945.71, we begin with the day after the accused was arrested."   *Gatewood*, 2d Dist. Clark No. 2010 CA 18, 2012-Ohio-202, at ¶ 21, citing *State v. Broughton*, 62 Ohio St.3d 253, 260, 581 N.E.2d 541 (1991).   Further, "[t]he merits of a motion for discharge for a violation of speedy trial rights made pursuant to R.C. 2945.73 are determined as of the date the motion is filed, not when it is decided or when, after a denial, a defendant is brought to trial."   (Citation omitted.)   *State v. Ferguson*, 2d Dist. Clark No. 08CA0050, 2011-Ohio-4285, ¶ 55.

**{¶ 30}** The facts elicited at the hearing on the motion to dismiss the B indictment indicate that Lackey was arrested on April 19, 2013 for the April 12, 2013 arson (the event that led to the A Indictment).   When Lackey was arrested, Detective Phelps-Powers was unaware of any connection that Lackey had to the April 9, 2013 arson.   Specifically, when the detective first interviewed Whitfield on April 17, 2013, he denied any involvement with the April 9, 2013 arson, and did not give her any information about that arson.

**{¶ 31}** Lackey was in jail regarding the April 12, 2013 arson charge until the April 29, 2013 preliminary hearing in municipal court, when the complaint was dismissed

because the primary witness failed to appear.   Thus, for speedy trial purposes, 10 days had elapsed with respect to the April 12, 2012 arson, and these days would be triple-counted pursuant to R.C. 2945.71(E), because Lackey was in jail.   Thus, a total of 30 days elapsed, and at the time that charge was dismissed, the State had 240 days remaining on the speedy time clock with respect to the April 12, 2013 arson.

**{¶ 32}** As was noted, the trial court concluded that this time could not be assessed against the State because the State did not know when Lackey was arrested that he was involved in the April 9, 2013 arson.   We agree with the trial court, and those dates should not be counted against the State in connection with the B Indictment.

**{¶ 33}** The A Indictment, which concerned the April 12, 2013 arson, was filed on September 18, 2013.   The time period between the dismissal of the complaint on April 29, 2013, and the indictment on September 18, 2013, would not be included in any speedy trial computations for either the A or B indictments, because no charges were pending against Lackey during this time.   *See Ferguson*, 2d Dist. Clark No. 08CA0050, 2011-Ohio-4285, at ¶ 67, citing *Broughton*, 62 Ohio St.3d at 253, 581 N.E.2d 541.   *Accord State v. Diallo*, 10th Dist. Franklin No. 12AP-388, 2013-Ohio-1248, ¶ 14, citing *State v. Azbell*, 112 Ohio St.3d 300, 2006-Ohio-6552, 859 N.E.2d 532, ¶ 21.

**{¶ 34}** Accordingly, even if we assume, as the trial court did, that the crimes did not involve different facts and witnesses, and that the 270 day-period began to run on the B Indictment charges when the A Indictment was filed on September 18, 2013, no speedy trial violation occurred.   Lackey was arrested pursuant to that indictment on October 8, 2013, and was held in jail until October 30, 2013, when he posted bond.   Those twenty-two days would be triple counted for a total of 66 days.   A total of 179 days (excluding

the 22 triple-counted days) elapsed between the date of the A Indictment and the filing of the motion to dismiss. The addition of the triple-counted days results in only 245 days that had elapsed by the time the motion to dismiss was filed. (179 + 66 (22 x 3) = 245.)

{¶ 35} For purposes of this calculation, we have given the State no credit for continuances or the court's resolution of Lackey's motion to suppress evidence, which could have resulted in many additional days of tolling, pursuant to R.C. 2945.72(H).

{¶ 36} In its brief, the State employs a different calculation, using the date of Lackey's April 19, 2013 arrest, giving him triple-count credit for ten days of jail time in connection with that arrest, and charging him with only one continuance after he was arrested in October 2013. The State notes that even under this most generous scenario – which also would accept Lackey's argument that his second indictment was subject to the same speedy trial calculations as the first indictment – only 234 days passed for speedy trial purposes before Lackey filed his motion to dismiss.

{¶ 37} Lackey has not specifically responded to the State's argument. Instead, Lackey argued in his initial (and only) brief that he should have been given credit for time when no charges were pending (July through September 18, 2013), simply because the State could have possibly filed the A Indictment earlier. As was noted, time periods between the dismissal of charges and a subsequent indictment are not included in speedy trial computations, where no charges are pending in the interim. *Ferguson*, 2d Dist. Clark No. 08CA0050, 2011-Ohio-4285, at ¶ 67; *Diallo*, 10th Dist. Franklin No. 12AP-388, 2013-Ohio-1248, at ¶ 14.

{¶ 38} For example, in *Diallo*, the defendant was arrested and charged with trademark counterfeiting on December 2, 2010. *Id.* at ¶ 2. He was released from

Franklin County Corrections Center into the custody of immigration officials on December 6, 2010, and the counterfeiting complaint was dismissed a few days thereafter. *Id.*

**{¶ 39}** More than six months later, the defendant was indicted on trademark counterfeiting charges, and was brought back to the Franklin County Corrections Center from the Butler County jail, where he was being held on the immigrations detainer. *Id.* at ¶ 3. In October 2011, the defendant filed a motion to dismiss the indictment based on an alleged speedy trial violation. The trial court concluded that the time between the dismissal of the complaint in December 2010 and the 2011 indictment would count against the State, because the indictment arose on the same facts, and the State had all the necessary information to proceed. *Id.* at ¶ 5.

**{¶ 40}** On appeal, the Tenth District Court of Appeals disagreed, and reversed the dismissal of the indictment. The court stressed that "the speedy trial statute, R.C. 2945.71(C), runs against the state only during the time when an indictment or charge is pending * * *." *Diallo*, 10th Dist. Franklin No. 12AP-388, 2013-Ohio-1248, at ¶ 14, citing *Broughton*, 62 Ohio St.3d at 258, 581 N.E.2d 541. (Other citation omitted.)

**{¶ 41}** As was noted, we agree with this conclusion, and there are good policy reasons for our position. Although the State should not unduly delay charging defendants, the State must still have a reasonable amount of time to process evidence and decide if it intends to pursue charges.

**{¶ 42}** Lackey's speedy trial time had not elapsed under either scenario discussed above, by the time Lackey filed the motion to dismiss on April 7, 2014. Accordingly, even if the timetable for the A Indictment applied, the trial court did not err in overruling the motion to dismiss.

{¶ 43} Based on the preceding discussion, the First Assignment of Error is overruled.

III.   Failure to Sever the Indictments

{¶ 44} Lackey's Second Assignment of Error states that:

The Court's Failure to Sever the Trials for the A and B Indictments

Deprived Appellant of a Fair Trial and Due Process of Law.

{¶ 45} Under this assignment of error, Lackey contends that he was prejudiced by the trial court's refusal to allow separate trials on each indictment.   In particular, Lackey focuses on the jury's exposure to testimony about the dismissed charge, and argues that the jury would not have been able to disregard the testimony.   Lackey also contends that the trial court had difficulty separating the evidence to be sent back to the jury.   Finally, Lackey argues that the conclusion that the events are connected enough not to require severance conflicts with the conclusion that the crimes are distinct for speedy trial purposes.

{¶ 46} With respect to relief from joinder, Crim.R. 14 provides that:

If it appears that a defendant or the state is prejudiced by a joinder

of offenses or of defendants in an indictment, information, or complaint, or

by such joinder for trial together of indictments, informations or complaints,

the court shall order an election or separate trial of counts, grant a

severance of defendants, or provide such other relief as justice requires.

{¶ 47} "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.' "   *State v. Lott*, 51 Ohio

St.3d 160, 163, 555 N.E.2d 293 (1990), quoting *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981). "Crim.R. 8(A) also allows joinder of two or more offenses that 'are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.' " *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 49, quoting Crim.R. 8(A).

{¶ 48} "A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus. *Accord Lott* at 163.

{¶ 49} "The state may rebut a defendant's claim of prejudicial joinder in two ways. The first way is by satisfying the 'other acts' test. * * * If in separate trials the state could introduce evidence of the joined offenses as 'other acts' under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder." *Lamar* at ¶ 50, citing *Lott* at 163. (Other citation omitted.) "The state may also negate a claim of prejudice by satisfying the less stringent 'joinder test,' which requires a showing 'that evidence of each crime joined at trial is simple and direct.' " *Id.*, quoting *Lott* at 163. (Other citation omitted.)

{¶ 50} As an initial matter, the fact that the court ultimately dismissed the April 12, 2013 arson charge does not mean that the court erred in refusing to try the charges separately. When the court made its decision on the motion to sever, Lackey was

charged with having participated in a plan or course of conduct to set fire to the Sunoco station: first, by having Whitfield set the fire; and then, after Whitfield was in jail, by setting the fire himself, or with others. Consistent with the "other acts" test, even if the trials were separate, the State would have been permitted to present evidence about both fires in each trial, to show that Lackey was engaged in an ongoing plan to burn down the station. The motive, as noted, was an alleged dispute between the station's owner and the owner of King's Furniture.

{¶ 51} In this regard, Evid.R. 404(B) states that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 52} Furthermore, even though the court concluded that the cases were sufficiently different for speedy trial purposes, this does not necessarily mean that the cases should have been severed. The facts and evidence, while distinct, were not complicated. The jury, therefore, would not have had trouble understanding, after the Crim.R. 29 dismissal, that it should consider only the events surrounding the April 9, 2013 fire. In fact, the trial court instructed the jury to this effect on two occasions. *See* Transcript of Proceedings, Vol. III, pp. 533-534, and p. 618. We presume that the jury followed the court's instructions. *See, e.g., State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 51; *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 147. We have also reviewed the record and we see no

evidence of confusion on the part of the trial court or the jury.

**{¶ 53}** Accordingly, the Second Assignment of Error is overruled.

### IV.   Amendment of the B Indictment

**{¶ 54}** Lackey's Third Assignment of Error states that:

Amending the B Indictment After the Closing of Appellant's Case-in-Chief Was a Material Change and Deprived Appellant of a Fair Trial and Due Process of Law.

**{¶ 55}** Under this assignment of error, Lackey contends that the trial court erred in permitting the B Indictment to be amended at the close of the State's case, because the amendment was a material change.   Specifically, Lackey argues that the amendment effectively added another charge to the indictment by treating the conspiracy charge in the B Indictment as two separate charges: a conspiracy to commit arson on April 8, 2013, and a conspiracy to commit arson on April 12, 2013.

**{¶ 56}** The A Indictment charged Lackey with Aggravated Arson, in that he caused physical harm to the Sunoco Station, located at 3900 Salem Avenue, on April 12, 2013. Doc. #7.   The B Indictment alleged in Count One that:

EDDIE LACKEY, between the dates of April 8, 2013 through April 12, 2013 * * * with purpose to commit or promote or facilitate the commission of Aggravated Arson, * * * did plan or aid in planning the commission of such offense with another person or persons and that subsequent to the accused's entrance into said conspiracy, a substantial and overt act in furtherance of said conspiracy was done by him or a person with whom he

conspired, to wit;  Joe Whitfield threw a Molotov cocktail into 3900 Salem Ave. * * *.

Doc. #62, p. 1.

**{¶ 57}** The Second Count of the B Indictment alleged that:

EDDIE LACKEY, between the dates of April 8, 2013, through April 9, 2013, * * * did purposely and knowingly engage in such conduct that, if successful, would have constituted or resulted in the offense of Aggravated Arson * * *.

*Id.*

**{¶ 58}** After the charge in the A Indictment was dismissed, the trial court let the State amend the First Count of the B Indictment to state that the conspiracy occurred between the dates of April 8 through April 9, 2013.  Transcript of Proceedings, Vol. III, pp. 519-520.  The basis for this decision was that the jury would no longer be permitted to hear evidence pertaining to the April 12, 2013 arson.  In support of its decision, the trial court cited Crim.R. 7(D) and *State v. DeWitt*, 7th Dist. Mahoning No. 09 MA 68, 2010-Ohio-4777, which held that a change of dates in the indictment to conform to evidence at trial did not prejudice the defendant.  *Id.* at ¶ 42-46.

**{¶ 59}** "The Sixth Amendment to the U.S. Constitution provides an accused in a criminal prosecution the right to be informed of the 'nature and cause of the accusation' against him.  This right, like all other Sixth Amendment rights, is part of the due process of law that is guaranteed by the Fourteenth Amendment to all criminal defendants in state court." *State v. Collinsworth*, 12th Dist. Brown No. CA2003-10-012, 2004-Ohio-5902, ¶ 15, citing *Faretta v. California*, 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

**{¶ 60}** Section 10, Article I of the Ohio Constitution echoes this right, by

guaranteeing "the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury." (Citation omitted.) *State v. Headley*, 6 Ohio St.3d 475, 478, 453 N.E.2d 716 (1983), *clarified on other grounds in State v. Jackson*, 134 Ohio St.3d 184, 2012-Ohio-5561, 980 N.E.2d 1032, ¶ 20-21. "Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." (Citations omitted.) *Headley* at 478-479.

**{¶ 61}** Crim.R. 7(D) manifests the essence of this constitutional guarantee. *Id.* at 479. In this regard, Crim.R. 7(D) provides that:

> The court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, * * * the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.

**{¶ 62}** "The purpose of an indictment is twofold. By compelling the government to aver all material facts constituting the essential elements of an offense, an accused is

afforded with adequate notice and an opportunity to defend. * * * An indictment, by identifying and defining the offense, also enables an accused to protect himself from any future prosecutions for the same offense." (Citations omitted.) *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985).

**{¶ 63}** Amendments are not permitted where they alter an offense's degree or penalty. In these circumstances, the amendment "changes the identity of the offense." *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, ¶ 9.

**{¶ 64}** Before Count One was amended, the State was required to prove that Lackey, with another person, planned or aided in the planning of Aggravated Arson, and that after Lackey entered into the conspiracy, a substantial act in furtherance of the conspiracy was done by Lackey or by another person with whom he conspired. The substantial act outlined in Count One was that Whitfield threw a Molotov cocktail into 3900 Salem Avenue. *See* Doc. #62, p. 1; R.C. 2923.01(A)(1); and R.C. 2909.02(A)(1). The substantial act occurred on April 9, 2013.

**{¶ 65}** An indictment is "sufficient if it can be understood that the offense was committed at some time prior to the time of the filing." *Sellards* at 171. "Ordinarily, precise times and dates are not essential elements of offenses." *Id.* Thus, the precise date on which Lackey conspired with Whitfield was not an essential element. However, with respect to the April 9, 2013 arson, the conspiracy would have had to occur prior to the time the arson was attempted.

**{¶ 66}** As an example of the fact that dates are not essential elements, the indictment in *Collinsworth* stated that a rape victim had been assaulted between certain dates in 1997. *Collingsworth*, 12th Dist. Brown No. CA2003-10-012, 2004-Ohio-5902,

at ¶ 5. However, the evidence at trial indicated that the victim was not living in Ohio at the time. *Id.* at ¶ 6. As a result, the court granted an amendment at the close of the State's case, to provide that the alleged rapes occurred in 1996. *Id.* at ¶ 7.

{¶ 67} The court of appeals concluded that the trial court did not err by allowing the amendment, because the amendment did not change the name or identity of the charges, and was also not a change to the substance of the indictment. *Id.* at ¶ 24 and 34-35. In addition, the court found no prejudice even if the amendment had been substantive, because the defendant had confessed to having had sexual relations with the victim. *Id.* at ¶ 36.[1]

{¶ 68} In contrast, in *State v. Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (8th Dist.1994), the court of appeals found that the amendment of dates in an indictment violated Crim.R. 7(D). *Id.* at 700-701. In *Vitale*, the indictment alleged that a theft had occurred on June 14, 1991. However, the State was allowed to amend the indictment at the conclusion of its case to specify that the theft was committed from June 14, 1991 through June 21, 1991. *Id.* at 698-699.

{¶ 69} In rejecting the amendment, the court of appeals stressed that:

> The indictment herein only specified the date of the offense as on or about June 14, 1991. The defense sought a bill of particulars. "[T]he state must, in response to a request for a bill of particulars * * * supply specific dates and times with regard to an alleged offense where it possesses such

---

[1] The amendment may have been an issue if it prevented the defendant from being able to assert an alibi defense, for example. *See DeWitt,* 7th Dist. Mahoning No. 09 MA 68, 2010-Ohio-4777, at ¶ 44-46. However, *Collingsworth* did not apparently involve such a factor.

information * * *." *State v. Sellards* (1985), 17 Ohio St.3d 169, 17 OBR 410, 478 N.E.2d 781, syllabus. In response, the state's bill of particulars further specified that the offense occurred "on or about June 14, 1991 at approximately 12:00 p.m., at the location of 1869 East 79th Street, in the City of Cleveland, Ohio." If the state had knowledge that the offense charged could also have occurred on June 21 at Amos' home, then it was obliged to so state. Since it didn't, it must be presumed that the evidence presented to the grand jury was limited to the June 14 episode identified in the state's bill of particulars and not some other date, time or place to which no reference is made.

*Vitale* at 699-700.

{¶ 70} The court of appeals concluded that the defendant was prejudiced because there was a grave risk that he had been convicted of a felony on evidence that had not been presented to the grand jury. *Id.* at 699. The court further found that the identity of the crime had been changed, stating that:

Obviously, if the identity of the crime moves from events on June 14 to different events on June 21, at a different time and place, the identity of the crime has been improperly changed. Where the amendment to an indictment requires proof of an essential factual element which the original indictment did not, "the amendment of the indictment changed the identity of the crime charged in contravention of Crim.R. 7(D)."

*Id.* at 701, quoting *State v. Woody,* 29 Ohio App.3d 364, 365, 505 N.E.2d 646 (1st Dist.1986).

{¶ 71} The circumstances in the case before us are unlike those in *Vitale*, and the amendment did not change the identity of the crime with which Lackey was charged. A reading of Count One of the B Indictment leaves no doubt as to the elements of the crime with which Lackey was being charged. The amendment to conform to the evidence actually narrowed, rather than increased, the time frame in question, and did not prejudice Lackey. The indictment indicates that the crime in question was conspiracy with respect to the fire that occurred on April 9, 2013, and the events of April 8 and 9, 2013, were clearly encompassed within the evidence the grand jury considered. The only effect of the amendment was to narrow the time frame the jury considered, to conform to the evidence that the jury was permitted to consider. *Compare State v. Honeycutt*, 2d Dist. Montgomery No. 19004, 2002 WL 1438648 (July 5, 2002) (noting that "*Vitale* stands for the proposition that the state 'should be restricted in its proof to the indictment and the particulars as set forth in the bill.' "). *Id.* at *3, quoting *Vitale,* 96 Ohio App.3d at 700, 645 N.E.2d 1277. (Other citation omitted.)

{¶ 72} In *Honeycutt*, we distinguished *Vitale*, observing that the State had restricted its proof to the indictment and the bill of particulars. *Id.* Similarly, the State in the case before us restricted itself to what was included in the B Indictment, and the trial court did not violate Crim.R. 7(D) by permitting the amendment after the charge in the A Indictment was dismissed.

{¶ 73} Based on the preceding discussion, the Third Assignment of Error is overruled.

V. Conclusion

{¶ 74} All of Lackey's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Bahjat M. Abdallah
Hon. Michael Tucker